54 F.2d 1065 (1932)
In re WEBB.
WEBB
v.
RALEIGH HARDWARE CO. (two cases).
Nos. 3192, 3193.
Circuit Court of Appeals, Fourth Circuit.
January 12, 1932.
Carl C. Sanders and Clarence W. Meadows, both of Beckley, W. Va., for appellant.
*1066 Ben H. Ashworth, of Beckley, W. Va., and R. Carter Scott, Jr., of Richmond, Va., for appellee.
Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.
NORTHCOTT, Circuit Judge.
On May 27, 1929, Lewis McKinney Webb, appellant here, to be hereinafter referred to as the bankrupt, filed his voluntary petition in bankruptcy in the District Court of the United States for the Southern District of West Virginia, and was duly adjudicated a bankrupt thereon.
In his schedule, duly sworn to, the bankrupt listed as a creditor the Lincoln Bond & Mortgage Company (now known as Standard Bond & Mortgage Company) of Richmond, Va., stating in said petition that the amount of the indebtedness was $9,233.50, and that it was secured by two deeds of trust on certain property of the bankrupt located in the town of Mabscott, W. Va., to be hereinafter spoken of as "business property."
The proceedings were referred to the Honorable P. J. Carr, referee in bankruptcy, and on June 10, 1929, K. D. Bowers, an attorney at law, was elected trustee and duly qualified.
Shortly after December 23, 1929, the Lincoln (Standard) Bond & Mortgage Company filed its claim in the bankruptcy proceedings, alleging that the bankrupt was indebted to it in the total amount of $9,233.50, evidenced by certain negotiable notes made by the bankrupt and his wife, secured as above set out, that it was the holder in due course of said notes, and that there was no offset or counterclaim to the same.
Raleigh Hardware Company, the present appellee, hereinafter to be referred to as petitioner, filed its unsecured claim against the bankrupt on June 25, 1929, in the sum of $191.22.
The trustee took charge of the aforesaid "business property" and endeavored to make sale thereof.
The trustee attempted to sell the property both privately and at public auction, upon the basis that the minimum offer would have to be $9,000.00, and when, after a year, no such offer had been received, on April 19, 1930, the referee, after stating that it appearing from the trustee's report that the said "business property" is "encumbered beyond the appraised value of said real estate," ordered "that the said real estate be and the same is hereby released and abandoned as assets of the bankrupt's estate, and it is further ordered that said Trustee be and he is hereby instructed and directed to disclaim all title to the said real estate, and refuse to take the same into his possession."
Subsequently the bankrupt received his discharge, and on June 30, 1930, by order of the referee, the trustee was discharged and the estate closed.
Prior to May, 1930, the trustee in the deeds of trust on the aforesaid "business property", the mortgage company being the note holder, advertised that property for sale; the sale to be made in the month mentioned.
The bankrupt then filed in the circuit court of Raleigh county, W. Va., his bill of injunction to restrain the said trustee from making sale under the deeds of trust on the ground that the loans were usurious, that the true amount due thereon was $3,799.10, not $9,233.50, as claimed by the mortgage company, and that the difference between the two amounts was composed of excessive and illegal interest charges.
The lower state court granted a temporary injunction or restraining order which, subsequently, after a hearing on the merits, was dissolved, from which order the bankrupt obtained an appeal to the Supreme Court of Appeals of West Virginia, where the case is now pending.
On October 21, 1930, the present petitioner filed with the United States District Court its petition, setting forth the facts substantially as hereinabove stated, and alleging: (1) That there existed in the said "business property" at the time of bankruptcy a valuable equity of redemption; (2) that the bankrupt failed to disclose this equity to the court, or to any of the officers thereof; (3) that the order of the referee abandoning the said property was entered because no information of the true value of the equity of redemption was given him, and (4) that said order would not have been entered if such information had been given him.
The present petitioner tendered to the court, and has since deposited therein, the sum of $500, as a guarantee that the equity of redemption will amount to, at least, that amount and offering to purchase the same.
The petitioner prayed that the bankruptcy case be reopened, the order of the referee abandoning the "business property," as an asset be "set aside and held for naught," and that the trustee when elected be directed to take charge of said "business property" and to dispose of the same for the benefit of the bankrupt's creditors.
*1067 On the same day the petition was filed, the District Court entered an order reopening the estate and referred the matter to Hon. P. J. Carr, referee, to determine the issues raised by the petition of Raleigh Hardware Company.
Pursuant to this order, the referee set a date for the hearing on whether or not the prayers of the petition should be granted, and notified all interested parties.
The bankrupt filed a motion to dismiss and an answer, and, upon the pleadings and the evidence of witnesses December 30, 1930, the referee entered an order setting aside his former order abandoning the "business property" and ordering that the said property "be held and considered as an asset of said bankrupt's estate and that the same be administered as such in the manner provided by law."
A petition for review being filed, the matter was heard by the District Court, and on April 6, 1931, the court affirmed the order of the referee dated December 30, 1930. From this order, the present appeal has been taken.
There are two appeals, one under section 24b of the Bankruptcy Act, 11 USCA § 47 (b) (case No. 3193) allowed by this court, and one under section 25a of that act, 11 USCA § 48 (a) allowed by the District Court. By stipulation it was agreed that the two appeals should be consolidated. The cases were heard together in this court.
When real property of the bankrupt is incumbered by a mortgage, valid as to creditors and not voidable under the Bankruptcy Act, the trustee takes title to the bankrupt's equity of redemption in the premises. Where he elects, after a reasonable time, not to take and charge the estate with incumbered property of the bankrupt, or where he abandons it, the property and the right of redemption remains in, or reverts to, the bankrupt.
In the absence of fraud or misrepresentation (either by the statements of the bankrupt or by his withholding information he should have given), the property reverts to the bankrupt, subject to the valid lien indebtedness, and the bankrupt has a right to assert his title thereto. Remington on Bankruptcy, Vol. 2, § 1159, p. 499; First National Bank of Jacksboro v. Lasater, 196 U. S. 115, 25 S. Ct. 206, 49 L. Ed. 408; American File Co. v. Garrett, 110 U. S. 288, 4 S. Ct. 90, 28 L. Ed. 149; Sparhawk v. Yerkes, 142 U. S. 1, 12 S. Ct. 104, 35 L. Ed. 915; Sessions v. Romadka, 145 U. S. 29, 12 S. Ct. 799, 36 L. Ed. 609; Dushane v. Beall, 161 U. S. 513, 16 S. Ct. 637, 40 L. Ed. 791; In re Frazin (C. C. A.) 183 F. 28, 33 L. R. A. (N. S.) 745; Smith v. Wahl, 88 N. J. Law, 623, 97 A. 261; USCA, title 11, § 110, note 101, p. 321.
The evidence shows that the bankrupt disclosed to the trustee, in the bankrupt proceedings, the fact that the lien of the Bond & Mortgage Company could be "cut down." And the trustee testified that the bankrupt apparently aided him in every way possible to make a sale of the property in question. The bankrupt swore he told the referee of the amount borrowed from the mortgage company and of the amount paid back by him. That he (the bankrupt) did not state to the trustee that there was usury in the transaction because he did not, at that time, know the meaning of the word usury. This statement of the bankrupt, as to the money borrowed and the money paid, the trustee did not deny categorically, contenting himself with the statement that the bankrupt told him nothing "that would indicate that excessive interest was included in the loan." The trustee's admission that the bankrupt told him the debt could be "cut down" seems to contradict his later statement, and was certainly sufficient to put him (the trustee) upon diligent inquiry as to the transaction; yet the trustee testified that the only effort he made was to inquire of the attorney for the mortgage company, as to the correct amount of the debt. No evidence was taken to prove the amount legally due and owing on the mortgage.
The trustee having such knowledge, or being in a position that such knowledge could have been obtained, and having held the estate for almost a year, then making final settlement of it without electing to purge the debt of its usury before the estate was closed, the title to the claim for usury revested in the bankrupt. Loveland on Bankruptcy, Vol. 1 (4th Ed.) p. 774; In re Harper (D. C.) 175 F. 412; First National Bank of Jacksboro v. Lasater, supra; Irvin et al. v. Harris, et al., 189 N. C. 465, 127 S. E. 529; Sessions v. Romadka, supra; Meyers v. Josephson (C. C. A.) 124 F. 734; In re North Star Ice & Coal Co. (D. C.) 252 F. 301; In re Hasie (D. C.) 206 F. 789.
As was said in the head note in First Nat. Bank v. Lasater, supra: "While a trustee in bankruptcy is not bound to accept property of an onerous or unprofitable character, and in case he declines to take it the bankrupt may assert title thereto, he is entitled to be informed of the property and have a reasonable time to elect whether he will accept it or not. If a claim owned by a bankrupt is of *1068 value his creditors are entitled to it, and he cannot, by withholding knowledge of its existence from the trustee, after obtaining a discharge of his debts, immediately assert title to and collect the claim for his own benefit."
Here the record is convincing that the bankrupt concealed nothing and was active in endeavoring to help the trustee. The trustee surrendered his claim, and it would be highly inequitable and unjust to deprive the bankrupt of the reward of his diligence and industry, in prosecuting the litigation, which litigation has been of expense to the bankrupt.
Another phase of the case that does not especially appeal to a court of equity is the fact that the attorney for Standard Bond & Mortgage Company, with whom the bankrupt is litigating over the question of usury, who is also attorney for petitioner appellee, guaranteed that the petitioner's account would be paid in full if the petition were filed. The filing of the petition was evidently brought about by the mortgage company because of pique at the bankrupt's action in suing the company.
"Bankruptcy court endeavors, when possible, to do equity." In re Lowry (C. C. A.) 40 F.(2d) 321.
It is not equity to deprive the bankrupt of whatever value there is to him in the property should he prevail in the litigation now pending.
It is contended on behalf of the appellee that, as this is properly an appeal under section 24b of the Bankruptcy Act (11 USCA § 47 (b), the appeal in case No. 3192 should be dismissed with costs; but in view of the stipulation entered into, to consolidate the appeals, there is no merit in this contention.
There was error in the action of the court below.
The order is reversed, and this cause remanded.
Reversed.