**In the Matter of Charlie Davis POLUMBO, Jr., trading as Motel Hollins, Priscilla Anne Polumbo, Bankrupts.**

**Nos. 65–BK–492–R, 65–BK–493–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

June 27, 1967.

Franklin P. Pulley, III, Roanoke, Va., for bankrupts.

Evans B. Jessee, Arthur E. Smith, Roanoke, Va., for petitioners.

## OPINION

MICHIE, District Judge.

The present case requires a determination of whether the bankrupt estate or

the trustee under a deed of trust is primarily liable for delinquent real estate taxes on property abandoned by the trustee in bankruptcy and later sold at a foreclosure sale by the trustee under the deed of trust. The petitioners are the noteholders whose obligation was secured by the first lien deed of trust and who purchased the property at the foreclosure sale.

The bankrupts, Charlie Davis Polumbo, Jr. and Priscilla Anne Polumbo, operated the Motel Hollins located on Route 11 north of Roanoke in Botetourt County, Virginia. These debtors filed a voluntary petition in bankruptcy on August 31, 1965, at which time the motel, the only real property of which they were seised, was subject to a deferred purchase money first lien deed of trust to Arthur E. Smith, trustee, securing to petitioners, D. B. Oyler and F. A. Oyler, an indebtedness of $130,438.68.

As of the date of the filing of the petition in bankruptcy the real estate constituting the motel had been advertised for sale pursuant to the terms of the deed of trust. At the first meeting of creditors held on the 13th day of September, 1965, the referee in bankruptcy heard evidence which established that the total amount of debts secured upon the real estate aggregated $159,941.48. An evaluation by an appraiser established that the fair market value of the property would come to no more than $115,000.00. Being so advised, the referee concluded that the property was burdensome to the estate and ordered that it be abandoned. With the understanding that the creditors secured by the deeds of trust would proceed against the property by foreclosure, the referee allowed that the bankruptcy trustee and the trustee conducting the foreclosure sale should cooperate in the sale of the personal and real property so that the motel might be sold as a going business. The bankruptcy trustee was therefore allowed to advertise jointly with the foreclosure trustee and to make arrangements with respect to splitting the costs of the sale.

On October 1, 1965, the motel was sold as a going concern to the highest bidder, the bondholders under the first lien deed of trust. The real estate alone brought $75,000.00. No mention was made of the status of delinquent real estate taxes against the property at the time of the sale, nor had any mention previously been made.

Sometime after the sale and after the trustee was no longer possessed of any proceeds with which to satisfy them, it developed that real estate taxes in the amount of $2,303.18 were delinquent against the property. The Treasurer of Botetourt County then filed a proof of claim in the bankruptcy proceeding requesting the payment of the taxes as a priority claim. Petitioners, who as purchasers are held to be liable under Virginia Code § 58–762 for delinquent taxes, urged that the taxes must be paid as a priority claim from the general estate. Although there remained in the hands of the trustee in bankruptcy a fund, which emanated from the sale of the personal property, sufficient to cover the amount of delinquent taxes the trustee took the position that he was not liable for the payment of the delinquent real estate taxes and refused to pay them. His contention is that the taxes constituted a first lien on the abandoned real estate and should have been paid by the foreclosure trustee from the proceeds of the sale under the deed of trust. The referee in bankruptcy, the Honorable J. T. Engleby, Jr., held that as between the bankrupt estate and the fund created by the sale of the real estate, the delinquent taxes could be satisfied only from the latter. Petitioners appeal from this determination. I conclude that the referee was correct and, therefore, affirm.

Counsel for the petitioners have referred the court to § 64(a) (4) of the Bankruptcy Act which provides that taxes legally due and owing to the United States or any state or any subdivision thereof shall be entitled to payment in the fourth priority. It is urged upon the court that this section indicates a policy of the Act that taxes are to be given pref-

erential treatment and that, therefore, it is the responsibility of the trustee to see that they are paid. Counsel for the trustee in bankruptcy, on the other hand, point to the protection afforded the taxing authority under Virginia law by §§ 55–59 and 58–762 of the Virginia Code. These sections give real estate taxes a priority over the payment of the proceeds of a foreclosure sale. They direct that the foreclosure trustee must satisfy all outstanding tax deficiencies before distributing the proceeds,, and in the event that this section fails, it is provided that the delinquent taxes shall remain a debt outstanding against the purchaser at the sale.

However, since both § 64(a) (4) of the Bankruptcy Act and the above cited sections of the Virginia Code are intended primarily to assure the payment of taxes to the taxing authority, they are of little help in this case which concerns the proper administration of bankrupt estates. Nor is Virginia law of much aid as it does not pinpoint whether the land itself or the owner of the land subject to tax bears the primary responsibility. Under Virginia law, delinquent taxes are both a personal debt and a lien upon the land. It appears that they run with the land inasmuch as § 58–762 states:

> * * * The lien shall continue to be such prior lien until actual payment shall have been made to the proper officer of the taxing authority. The purchaser at a sale under a deed of trust shall see that the proceeds are applied to the payment of all taxes and levies assessed on real estate, the provisions of § 55–59 to the contrary notwithstanding.

At the same time, however, relevant case law indicates that the taxing authority may assert its claim *in personam* against the owner of the land or may proceed *in rem* by a suit in equity. Pollard & Bagby, Inc. v. City of Richmond, 181 Va. 181, 24 S.E.2d 564 (1943). And, furthermore, § 58–762, while it makes the lien of delinquent taxes run with the land, was enacted solely for the purpose of insuring the collection of taxes and was not intended to affect the competing rights of other parties. Thomas v. Young, 196 Va. 1166, 87 S.E.2d 127, 50 A.L.R.2d 592 (1955).

The issue in this case is whether in the administration of a bankrupt estate, the estate itself or the bondholder receiving the proceeds from the foreclosure sale of an abandoned asset must bear the burden of delinquent taxes assessed against that asset. A determination must rest not upon laws intended to insure the collection of taxes, but rather upon the realities of bankruptcy administration.

Pivotal is the fact that the encumbered asset has been abandoned by the trustee and is no longer a part of the bankrupt estate. Abandonment distinguishes this case from In re Cleveland, 146 F.Supp. 765 (E.D.N.C.1956) relied on by petitioners. Here, a definite abandonment of the property occurred before the sale. The bankruptcy trustee and the trustee under the deed of trust cooperated so that the asset of each might be enhanced in value. In *Cleveland*, however, after the encumbered asset had been made a part of the estate, the referee merely permitted it to be sold by the trustee under the deed of trust, presumably with the understanding that any excess would be paid to the bankrupt estate. Never was there any indication that the referee intended to abandon the asset; in fact, it appears that the sale took place at his direction.

 Section 70(a) of the Bankruptcy Act vests title to all of the bankrupt's property in the trustee as of the date of the filing of the petition.

> Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation.

Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 738, 51 S.Ct. 270, 272, 75 L.Ed. 645 (1931). However, the trustee in bankruptcy is not obliged to accept property so encumbered with liens as to be

burdensome to the estate. Meyer v. Fleming, 327 U.S. 161, 166, 66 S.Ct. 382, 90 L.Ed. 595 (1946). As a rule, the trustee should abandon or disclaim all assets encumbered in excess of their value. Federal Land Bank of Berkeley v. Nalder, 116 F.2d 1004 (10th Cir. 1941), cert. denied, 313 U.S. 578, 61 S.Ct. 1095, 85 L. Ed. 1535 (1941). Abandonment by the trustee of an asset immediately revests title to that asset in the bankrupt. In re Thomas, 204 F.2d 788, 792 (7th Cir. 1953). Once he has elected to abandon an asset, the trustee is absolutely precluded from later reclaiming it, even if a subsequent increase in its value would make it of benefit to the estate. Beck v. Unruh, 37 Cal.2d 148, 231 P.2d 13 (1951). See generally: Collier on Bankruptcy 14th Ed., Vol. 4, ¶ 70.42, p. 1329, et seq.

■ Since abandonment has no effect upon the validity of the liens encumbering the property (Collier ¶ 70.42 [4] n. 19a), the practical effect of the election is to remove the asset entirely from the jurisdiction of the bankruptcy court. It is simply a declaration by the trustee that the bankrupt estate wants nothing further to do with the property and that the lienors are free to proceed against it just as they normally would under applicable state law.

Virginia law gives unquestioned priority to the tax lien. Thus, whether the foreclosure was initiated by the tax lienor, the deed of trust lienor, or the second deed of trust lienor, the proceeds of the sale would go first to satisfy the outstanding tax lien. Only that amount remaining would go to the first deed of trust lienor, in this case resulting in a partial satisfaction of that indebtedness with nothing left over for the second deed of trust lienor. Of importance is that the amount received by the petitioners should have, and normally would have, been reduced by the amount of the tax lien. Those lienors not receiving full satisfaction may, of course, apply for dividends from the general estate.

With the rights of the parties thus in mind, I turn now to a comparison of the results had the property been adminis-tered by the bankruptcy trustee. Under this alternative also, a secured creditor is entitled to avail himself of the security and share in the general assets of the estate as to the unsecured balance. With the exception of those liens subordinated by § 67(c), all secured claims must be satisfied before the general estate is ever determined. Since state law governs the priority of liens even in bankruptcy and Virginia law gives a tax lien priority over an antecedent deed of trust, the county's tax claim would have to be satisfied before the petitioners' claim could be considered. Absent application of equitable marshalling, not relevant here, the value of petitioner's security would have been the amount the motel property brought at the foreclosure sale, less the amount of the prior tax lien. Jefferson Standard Life Ins. Co. v. United States, 247 F.2d 777 (9th Cir. 1957).

Thus, if the motel property had been administered in the bankruptcy court, the trustee would have been under a duty to see that the county's tax lien was satisfied before any application of proceeds was made toward the claim of petitioners under the deed of trust. Similarly, if the foreclosure sale and the distribution of proceeds by the foreclosure trustee had been properly effected, an identical settlement would have resulted. In each case, the amount realized by petitioners upon their security would have been the selling price of the property reduced by the amount of the county's outstanding tax lien. By having received the full proceeds from the foreclosure sale and now contending that the bankrupt estate is liable for the unpaid taxes, the petitioners unquestionably seek to retain a windfall to which they are not entitled.

■ Furthermore, it is an accepted rule in bankruptcy that a trustee who abandons property may not abandon the burdens of that property and at the same time retain the benefits of it. See, e. g., In re Tidy House Products Co., 79 F. Supp. 674 (S.D.Iowa 1948). Conversely, the trustee having renounced the possible benefits of an asset, should not be forced to retain a burden, in this case, resulting

in a windfall to petitioners and a detriment to the general estate.

 Both the referee and the petitioners have overlooked the first proviso of § 64(a) (4) which bears directly upon the issue and affords an additional basis for affirmance of the referee. The statute with the proviso, which was added in 1926, reads in pertinent part:

> The debts to have priority * * * and to be paid in full * * * shall be * * * (4) taxes legally due and owing by the bankrupt * * * *Provided*, That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court.

With no compunction, I adopt as authority the apt analysis of the effect of the proviso found in Collier on Bankruptcy 14th Ed., Vol. 3, ¶ 64.406, at p. 2177 set forth below:

> Before 1926 the assets of bankrupt estates were often almost entirely depleted by the payment of overdue taxes on real property which had come into the hands of the trustee—in spite of the fact that such property was often thereafter abandoned to mortgagees or the taxing authorities—since such taxes were construed, under many state statutes, to be taxes legally due and owing by the bankrupt personally although they may have been also liens on the real estate. The injustice of such payments at the expense of general creditors for the benefit of mortgagees or purchasers at tax sales was patent, since the payment of taxes from the bankrupt estate cleared away tax claims which otherwise would have remained charges on the real estate in their hands and thus such payment inured solely to their benefit. *After the 1926 Amendment, a trustee could by the process of abandonment of heavily encumbered real estate reduce the taxable interest of the bankrupt's estate to zero.* [Emphasis added.]

Accord: Robertson v. Goree, 29 F.2d 261 (C.C.A. 5th Cir. 1928).

The abandonment of the motel property reduced to zero the interest of the bankrupt estate therein, making it impossible for the county to achieve a priority status as to the taxes on it, and by the weight of authority precluded any payment for real estate taxes from the bankrupt estate. Collier, supra, ¶ 64.406 at p. 2183.

For the reasons set forth above, the decision of the referee refusing to satisfy the county's tax claim out of the general estate is affirmed. An order will be entered in accordance with this opinion.