In re Stephen E. **ROBERTS**, Bankrupt.

Jarrell F. **STRICKLAND**,
Appellee-Plaintiff,

v.

Stephen E. **ROBERTS**,
Appellant-Defendant.

No. B77–3315.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 31, 1978.

---

10. As we have noted, some 21% of the men temporarily registered pursuant to Determination 15 are either black or Hispanic.

David D. Rawlings of Rawlings & Mobley, Atlanta, Ga., for appellee-plaintiff.

Robert K. Finnell, Rome, Ga., for appellant-defendant.

## ORDER

MURPHY, District Judge.

This action is before the Court on appeal from a judgment issued in the Bankruptcy Court. The only issue raised on appeal was contained in appellant's motion to dismiss filed on July 26, 1978. Appellant contends that the lower court lacked the requisite jurisdiction over the subject matter to consider the plaintiff's complaint.

The fact situation underlying this action is somewhat complicated. However, both the facts and the law were well briefed by counsel for the parties. Although the Court will set out the more pertinent facts giving rise to this action, a more detailed recitation is available in the Bankruptcy Court's memorandum filed on July 17, 1978.

90

## STATEMENT OF FACTS

In August 1977, Jarrell Strickland placed his house with swimming pool on the open market for sale. The residence was located on four acres of land in Fayette County, Georgia. Plaintiff wished to sell his residence because he was leaving the Atlanta area to enter the construction business in California.

The appellant was shown the property in August 1977, by an agent of Tara Properties, Inc., a real estate firm. Apparently the appellant and his agent indicated that he was financially capable of purchasing property valued at over $100,000. In reality, the appellant was unable to pay his debts. Within three months the appellant would file his voluntary petition in bankruptcy.

Negotiations were largely between a Mr. Collins, an agent for the appellant, and a Mr. George, an agent representing the appellee. Appellant, unable to obtain a bank loan, wished to give a promissory note for $100,000 in order to purchase the property. The plaintiff made it clear that he would accept a note from defendant for a net purchase price of $100,000 only if the note was guaranteed by a mortgage insurance company.

On Friday, September 9, 1977, the appellant signed a contract providing for a purchase price of $107,000, of which $7,000 would be paid to Tara Properties, Inc. as a commission. The balance of $100,000 was to be paid by a promissory note from the appellant to the appellee bearing interest at the rate of 9% per year and secured by a deed to secure debt. The note provided for monthly payments for ten years at which time the principal indebtedness would be due in a balloon payment. In addition, the contract contained a clause requiring appellant to obtain a mortgage guaranty insurance policy from a specified company. This clause stated that, "The policy shall be ordered and the premium paid by the Purchaser at the time of closing the sale." The contract provided for a closing on September 12, 1977, with possession to be afforded the defendant on September 15, 1977. The contract was signed by the appellee on the following day.

On Friday, September 9, 1977, the defendant engaged Mr. Brooks, an attorney, to close the anticipated purchase. After informing Mr. Brooks that he would be out of town on the day of the closing, the defendant authorized Mr. Brooks to act for him at the closing. To provide for the payment of the attorney's fee as well as other charges incident to closing, the defendant left several signed blank counter checks with Mr. Brooks. Defendant also executed a sight draft in the amount of $6,000 payable to Tara Properties, Inc., and turned it over to Mr. Brooks.

On that Friday, Mr. Brooks had the defendant execute a deed to secure debt, the promissory note and the power of attorney. Also on that Friday, Mr. Brooks' assistant completed one of the blank checks to cover the $500 attorney's fees. On checking with the bank, the assistant was told that defendant's account did not have sufficient funds to cover the check.

At the closing, the plaintiff was alarmed by defendant's absence. He was also concerned about the mortgage insurance, since without that he would not accept defendant's promissory note. Plaintiff was informed by Mr. Brooks that if the insurance could not be obtained the plaintiff could retake the property. To alleviate plaintiff's concern, Mr. Brooks wrote the following note on the closing statement:

> If the Mortgage Guaranty Insurance Company does not insure the loan and the deal does not be [sic] completed then the Buyer will reimburse Seller for reasonable expenses incurred by such event.
>
> Stephen E. Roberts
> By William J. Brooks

This note apparently satisfied the plaintiff that he would be compensated for expenses incurred in retaking the property. Plaintiff executed the warranty deed believing that Mr. Brooks would hold it until the mortgage insurance was obtained.

Mr. Brooks did not sense what the plaintiff intended. Immediately after the clos-

ing concluded Mr. Brooks had the warranty deed recorded. The deed to secure debt was not filed at that point because no funds existed to pay the intangible tax and recording fee. In late October Mr. Brooks became concerned about the inadequacy of the record as a result of his inability to record the deed to secure debt. Mr. Brooks prepared and had recorded his affidavit stating that there was a deed to secure debt on the described property which he held in escrow until certain conditions of the sales contract were met. He meant that he was holding the deed to secure debt until the intangible tax was paid. Mr. Brooks eventually paid the intangible tax himself and recorded the deed to secure debt.

In early November the plaintiff learned that the defendant's application for insurance had been denied. Upon returning to Georgia, the plaintiff was advised by his real estate agent to wait until defendant defaulted in his payments and then foreclose on the deed to secure debt. However, the plaintiff believed that he had been defrauded by the defendant and Mr. Brooks. He did not wish to wait, but wanted defendant to vacate immediately.

Subsequently the plaintiff retained his present attorney who demanded, by letter, that defendant vacate. At the same time plaintiff commenced a civil action for ejectment and damages in Fayette County Superior Court. Although plaintiff and his attorney met with the defendant, the parties were unable to reach a settlement of their dispute. In early December the defendant tendered his first monthly payment on the promissory note. Plaintiff, through his attorney, rejected it.

On December 9, 1977, the day of the state court hearing on the issue of possession, defendant filed his voluntary petition in bankruptcy. To avoid a violation of the automatic stays imposed by Bankruptcy Rules 401 and 601, the hearing in state court was canceled. On January 31, 1978, the trustee in bankruptcy petitioned the lower court to abandon the disputed property, since the estate could not benefit from administering the property. On February

9, 1978, the lower court granted the trustee's petition and declared that the plaintiff could proceed with his state court action.

A second state court hearing for temporary relief was scheduled for March 10, 1978. On March 9, 1978, the defendant attempted to convey the property to Areawide Investment, Inc., a defunct corporation with no assets. Defendant, acting as a corporate officer of Areawide, filed a Chapter XI petition with the Bankruptcy Court for Areawide. Once again the state court hearing was canceled due to the automatic stays imposed pursuant to Bankruptcy Rules 11–44. The Bankruptcy Court dismissed the Chapter XI petition on March 20, 1978. Hearings in state court were finally held on April 14, 1978, and temporary relief was denied.

On March 2, 1978, the plaintiff filed his Complaint to Determine Dischargeability of Debts. At a pretrial conference held on April 17, 1978, the parties discussed having all issues tried by consent by the Bankruptcy Court. A consent order to that effect was entered on May 30, 1978.

At trial the plaintiff sought damages for the fair rental value of the property, compensation for legal expenses, compensation for wages lost as a result of his return to Atlanta, and compensation for his travel expenses. In a judgment dated July 17, 1978, Bankruptcy Judge Ezra H. Cohen canceled the recorded deed between the plaintiff and defendant based on his finding of inadequate delivery. In addition Judge Cohen canceled the deed to secure debt and ordered that plaintiff had the right to immediate possession of the property. Judge Cohen also awarded the plaintiff $8,860 for attorney's fees and mesne profits for rental value of the property. On July 18, 1978, the defendant filed his notice of appeal from that judgment.

## CONCLUSION

The only issue raised on appeal by the bankrupt is that contained in his motion to dismiss. The appellant contends that the Bankruptcy Court lacked the requisite subject matter jurisdiction to declare the re-

corded warranty deed, the recorded deed to secure debt, the promissory note and all other instruments arising out of the transaction of September 12, 1977, "to be null and void and of no effect." It is the appellant's contention that once the Bankruptcy Court granted the trustee's petition to abandon the property in dispute, all issues pertaining to the property were outside of that Court's jurisdiction. The subject matter jurisdiction of the Bankruptcy Court could not be expanded, according to the appellant, by the consent of the involved parties.

1. It is axiomatic that the federal courts, including those of bankruptcy, are courts of limited jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *First State Bank v. Sand Springs State Bank*, 528 F.2d 350 (10th Cir. 1976). Consent of the parties cannot expand the subject matter jurisdiction of the federal courts. *Mansfield, C. & L. M. Ry. v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); *Barkman v. Sanford*, 162 F.2d 592 (5th Cir.), *cert. den.* 332 U.S. 816, 68 S.Ct. 155, 92 L.Ed. 393 (1947).

Rule 12(h)(2) of the Federal Rules of Civil Procedure provides that, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." In other words, an objection to the subject matter jurisdiction of the court may not be waived, but may be raised at any stage of the proceedings. Appellant's objection to the court's jurisdiction, though raised only on appeal, is timely.

2. Pursuant to § 17(c) of the Bankruptcy Act, 11 U.S.C. § 35(c), and Bankruptcy Rule 409, Mr. Strickland, as a creditor of the appellant, filed a complaint to determine dischargeability of a debt on March 2, 1978. This complaint, filed in conjunction with appellant's bankruptcy petition, alleged many of the facts stated previously. In addition the complaint asserted that the appellant was insolvent at the time of the closing and did knowingly, maliciously and falsely represent that he could comply with the conditions of the promissory note executed in the amount of $100,000. The complaint goes on to assert that in reliance upon the fraudulent representations of the appellant, Mr. Strickland relinquished possession of the Fayette County property. Paragraph 17 of the complaint states

Plaintiff has filed suit in the Superior Court of Fayette County on or about November 21, 1977 seeking damages from said defendant for the wilfull acts resulting in the fraudulent conversion heretofore described. Plaintiff seeks to have this Court determine that said claims for damages are not dischargeable due to the wilfull, knowing and intentional acts of the Defendant.

Paragraph 18 of the complaint asserts that damages incurred as a result of the alleged fraudulent conversion bar discharge as provided for by Subsections 17(a)(2) and (8) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2) and (8).

In support of his dismissal motion, the appellant argues that the Trustee's abandonment of the subject property removes that property from the jurisdiction of the Bankruptcy Court. *In Re Polumbo*, 271 F.Supp. 640 (W.D.Va.1967). Appellant correctly asserts that abandonment is irrevocable. *Id.* at 643. "The bankrupt after abandonment holds the title in the same manner as if it had never been in the trustee." 4A *Collier on Bankruptcy*, ¶ 70.42(4) (14th ed. 1967). Analogizing to exempted property, the appellant contends that matters in dispute concerning abandoned property are not subject to the jurisdiction of the Bankruptcy Court. See, *In Re Moore*, 288 F.Supp. 887 (C.D.Cal.1969).

The plaintiff brought his complaint to determine the dischargeability of debts pursuant to Rule 409 of the Bankruptcy Rules and section 17(c)(2) of the Bankruptcy Act, 11 U.S.C. § 35(c)(2). Section 17(c)(2) states in part:

A creditor who contends that his debt is not discharged under clause (2), (4), or (8) of subdivision (a) of this section must file an application for a determination of dischargeability within the time fixed by

the court pursuant to paragraph (1) of subdivision (b) of section 32 of this title and, unless an application is timely filed, the debt shall be discharged. . . . Section 17(c)(4) of the Bankruptcy Act, 11 U.S.C. § 35(c)(4), provides that the quoted passage applies whether or not an action on the debt is then pending in another court. It should be noted that the quoted passage is mandatory rather than suggestive in nature.

The plaintiff points out that the action being appealed from was not a reclamation petition for the property. The prayers for relief make no request for judgment regarding the status of the disputed property. After requesting service of the summons and complaint and a hearing, plaintiff's prayers seek: 1) a determination that damages resulting from the fraudulent conversion of plaintiff's property constitute a nondischargeable debt, 2) leave for the plaintiff to pursue his claim in other courts or in the alternative a judgment against the defendant for the damages incurred and 3) such other and further relief as the Court deems just and proper. In framing his prayers for relief in this manner, the plaintiff sought solely a determination of whether a debt arising out of damages for the fraudulent conversion of his property would be discharged as a result of his debtor's bankruptcy. Plaintiff's request for a judgment, pled in the alternative, complies with the mandate of Rule 409(b) of the Bankruptcy Rules:

> If his claim has not yet been reduced to judgment, the creditor shall include in a complaint an answer filed under subdivision (a) of this rule a statement of his claim and demand for judgment on the debt as provided in § 17c(3) of the Act.

▮▮▮ 3. The primary issue before the Bankruptcy Court as a result of plaintiff's complaint was whether an alleged debt would be dischargeable in bankruptcy. Jurisdiction to make such a determination is vested exclusively in the Bankruptcy Court. *In Re Mountjoy*, 368 F.Supp. 1087 (W.D.Mo. 1973); 1A *Collier on Bankruptcy* ¶ 17.28A(3) (14th ed. 1978). In addition to making its determination of dischargeability a bankruptcy court has the power to determine the size of a nondischargeable debt, render judgment thereon and decide any remaining issues. 11 U.S.C. § 35(c)(3). If the court determines that the debt is dischargeable it "shall make such orders as are necessary to protect or effectuate", that determination. *Id.*

The question now facing this Court is whether the lower court's rulings on the title to the property and damages were a prerequisite to a decision on the dischargeability of the alleged debt. If the answer is affirmative, then appellant's dismissal motion must be denied. Policies underlying the Bankruptcy Act and its accompanying rules are properly a factor in the Court's considerations.

▮▮▮ The chief purpose of the bankruptcy laws is to provide for prompt and efficient administration of the estate of all bankrupts without recourse to the usual modes of trial and the attendant delays. *Katchen v. Landry*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). By allowing the Bankruptcy Court to enter judgment, section 17(c)(3) avoids the unnecessary splitting of actions or filing of additional lawsuits. "The whole 'ball of wax' shall now be handled in the bankruptcy court, upon complaint filed pursuant to Bankruptcy Rule 409(a)." 1A *Collier on Bankruptcy* ¶ 17.28A[4] (14th ed. 1978). Indeed, if the Bankruptcy Court finds the debt nondischargeable, it has jurisdiction, pursuant to subsection 17(c)(3), to decide the remaining issues and render judgment. *Vickers v. Home Indemnity Company*, 546 F.2d 1149 (5th Cir. 1977); *Matter of Hickman*, 410 F.Supp. 528 (W.D.Mo.1976).

Plaintiff, relying on subsections 17(a)(2) and (8) of the Bankruptcy Act, 11 U.S.C. §§ 35(a)(2) and (8), argued that damages arising out of the fraudulent conversion of his property constituted a nondischargeable debt. Subsections 17(a)(2) and (8) provide that:

> A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . .
>
> (2) are liabilities for obtaining money or property by false pretenses or false repre-

sentations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another . . .

or (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision.

11 U.S.C. §§ 35(a)(2) and (8).

4. In order to ascertain whether the alleged debt fell within the enumerated subsections, the bankruptcy judge had to consider the underlying transaction. Specifically, the bankruptcy judge had to decide whether the property was obtained by fraud as described in the above quoted subsection. In finding that title to the property did not pass to the defendant, the lower court established that the damages did not result from fraudulent conversion. Therefore, such damages could not constitute nondischargeable debt. Resolution of the dischargeability issue could not have been reached without the lower court's findings as to title.

■ The judgment of the Bankruptcy Court canceling the instruments of title was necessary in order to enforce its findings. Without that judgment the plaintiff might have sought a judgment for damages for fraudulent conversion in a state court. If the defendant was unable to defend the suit for any reason a judgment contrary to the findings of the Bankruptcy Court could have been entered. Section 17(c)(2) of the Act, making the filing of a complaint to determine dischargeability mandatory, was enacted to prevent just such a circumstance. 1A *Collier on Bankruptcy* ¶ 17.-28A[3]. In this respect the lower court's judgment was a proper assertion of its authority.

■ The same conclusion does not apply to the lower court's award of mesne profits and attorney's fees. Having determined that no property passed as a result of fraud,

the question of dischargeability was decided. Although the Bankruptcy Court had reason to consider Georgia property law, this action was not one for ejectment. Subsection 17(c)(3) allows the Bankruptcy Court to consider the "remaining issues" if the debt was found to be nondischargeable. In the present action the Bankruptcy Court found that any damages resulting from the wrongful possession were dischargeable because they were not the result of fraudulent conversion. Jurisdiction of the lower court extended only as far as necessary to effectuate that determination. The Bankruptcy Court exceeded its jurisdiction by considering plaintiff's other claims and issuing a judgment for an amount of mesne profits and attorney's fees. That part of the judgment must be vacated. The plaintiff is free to seek such an award from an appropriate state tribunal.

Accordingly, defendant's motion to dismiss is DENIED. The judgment of the Bankruptcy Court is affirmed; except that portion allowing recovery of $8,860, that figure representing the award of mesne profits and attorney's fees. The portion of the judgment representing an award of mesne profits and attorney's fees is VACATED.