CUDAHY, Circuit Judge.
The Farmers & Merchants Bank of Fort Branch, Indiana seeks review of an order entered October 10, 1980, by the Honorable Gene E. Brooks, a United States District Judge, acting as a Judge of the Bankruptcy Court. This order granted the petition of J. Robert Duvall, trustee in bankruptcy for the estate of Lintz West Side Lumber, Inc., to set aside an earlier order entered by Judge Brooks, which authorized the abandonment of certain assets of the bankrupt. We affirm.
I.
Lintz West Side Lumber, Inc. (“Lintz Lumber” or the “bankrupt”) was indebted to the Farmers & Merchants Bank (the “Bank”) on two promissory notes totalling $90,000. To secure the indebtedness, the Bank obtained a security interest in the bankrupt’s inventory and accounts receivable. The parties executed a security agreement to this effect, and the Bank prepared a financing statement which listed the debt- or as:
Lintz, John Richard
Lintz, Mayella
2 Red Bank Road
Fort Branch, Indiana
The Bank filed the financing statement at the office of the Indiana Secretary of State and at the office of the Recorder of Gibson County, Indiana. By so filing, the Bank entertained the belief that it held a perfected security interest in the described property of Lintz Lumber.
On May 7, 1979, Lintz Lumber filed a voluntary petition in bankruptcy.[1] The proceedings were referred to Bankruptcy Judge Gene E. Brooks, and a trustee was appointed for the estate. On July 18, 1979, the trustee applied for and received authorization to abandon certain property of the bankrupt to several secured creditors. This property included the inventory and accounts receivable purportedly subject to the security interest of the Bank.
Several months later, however, the trustee petitioned the court to set aside the order of abandonment on the grounds that the trustee had discovered an apparent defect in the Bank’s financing statement. The trustee argued that the statement, filed under the names of John and Mayella Lintz, rather than Lintz West Side Lumber, Inc., was insufficient to perfect the Bank’s security interest because the difference in names would seriously mislead other creditors. Judge Brooks (now a United States District Judge) reviewed the briefs and stipulations of facts submitted by the parties and heard oral argument on the issue. On October 10, 1980, he entered an order vacating that portion of the July 18 order which approved the abandonment of the property to the Bank.
The Bank subsequently instituted this appeal.
II.
The Bank initially contends that the district court lacked the power to modify the July 18 abandonment order. This argument is based primarily on the provisions of Section 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c) (1978), which prescribe the procedures for district court review of an order entered by a bankruptcy judge. Section 39(c) requires the aggrieved party to file a petition for review within 10 days of the entry of the order or within a judicially *789 approved extension of that period.[2] Since more than three months elapsed between the entry of the abandonment order and the filing of the petition for review in the instant case, the Bank maintains that the petition is untimely and that the district court lacked the power to grant the relief requested.
We believe that the Bank has misconstrued the nature of the review afforded by Section 39(c). This statute was intended to provide a mechanism for appealing the decisions of a bankruptcy judge to the district court. The facts of the instant case indicate, however, that the trustee’s petition to set aside the July 18 abandonment order was not an "attempt to initiate an appeal of that decision to the district court. The trustee did not have the authority to appeal an order which granted his own application, and Judge Brooks could not sit as a district judge on a case which he had decided as a bankruptcy judge. Thus, the provisions of Section 39(c) governing appeals from the bankruptcy court to the district court are inapplicable.
The case instead involves the bankruptcy judge’s “ancient and elementary power to reconsider” his own orders. In re Pottasch Bros. Inc., 79 F.2d 613, 616 (2d Cir. 1935). Long ago, Judge Learned Hand concluded that there was no reason why a referee’s orders “should be as immutable as the Twelve Tables, once the ink is dry.” Id. It is now well settled that a bankruptcy judge has the power to reexamine and revise an order which he entered during the pendency of bankruptcy proceedings. In re Meter Maid Industries, Inc., 462 F.2d 436 (5th Cir. 1972); Frasch v. Wilson, 413 F.2d 69 (9th Cir. 1969). The fact that Judge Brooks set aside the order after his accession to the federal district bench is of no consequence in this particular circumstance. He still retained the power to exercise his discretion to reconsider his earlier order in light of the trustee’s facts and arguments as to the status of the Bank’s security interest. And in doing so, he did not abuse his discretion. [3]
The Bank also argues that Judge Brooks lacked the power to set aside the July 18 abandonment order because the trustee had been divested of his title to property upon entry of the abandonment order and could not subsequently challenge the Bank’s status as a secured creditor without asserting a new claim. We agree that abandonment divests the trustee of his title to the property of the bankrupt. Brown v. O’Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827 (1937); Fletcher v. Surprise, 180 F.2d 669 (7th Cir. 1950). Since the trustee is not entitled to benefit from any subsequent unforeseen enhancement in the value of abandoned property, abandonment orders are ordinarily irrevocable. In re Webb, 54 F.2d 1065 (4th Cir. 1932); In re Amm, 130 F.Supp. 73 (E.D.Pa.1955); In re Yalden, 109 F.Supp. 603 (D.Mass.1953). See also Brookhaven Bank & Trust Co. v. Gwin, 253 F.2d 17 (5th Cir. 1958); In re Gravure Paper & Board Corp., 234 F.2d 928 (3d Cir. 1953); In re Polumbo, 271 F.Supp. 640 *790 (W.D.Va.1967). Cf. In re Roberts, 460 F.Supp. 88 (N.D.Ga.1978).[4] But most of these cases involved situations in which the revocation of an abandonment order would unduly prejudice the rights of the innocent owner following abandonment of the property.[5]
In the instant case, however, the trustee is not attempting to reclaim abandoned property which has undergone an unantici *791 pated increase in value or to unfairly prejudice the purported secured party and owner of the property following abandonment. The trustee is merely attempting to correct the erroneous distribution of property by abandonment to a creditor with a security interest which has subsequently been shown to be unperfected throughout. Under these circumstances, where there has been a mistake in the original abandonment and where the purported secured creditor has not been unfairly prejudiced, we do not believe that the bankruptcy judge is precluded from reconsidering the entry of such an order setting aside a prior abandonment order.
 There is no indication in the Rules of Bankruptcy Procedure that abandonment orders should be treated differently than other orders by a bankruptcy judge which are subject to reexamination. Moreover, the provisions of Rule 60 of the Federal Rules of Civil Procedure are applicable to bankruptcy practice and would have provided a basis for setting aside the July 18 abandonment order even if the bankruptcy judge had been otherwise • specifically prohibited from reconsidering such orders.[6] See R.Bankr.P. 924. The absence of an explicit ban on reconsideration of abandonment orders in the Bankruptcy Rules and the availability of alternate relief tend to indicate that abandonment orders remain subject to the “ancient and elementary power [of the bankruptcy judge] to reconsider” his own orders. Pottasch Bros., 79 F.2d at 616. If a mistake has been made, it should be corrected, if the. correction is not unfairly prejudicial to innocent parties.
III.
Finally, the Bank claims that the district court erred in concluding that the Bank’s security interest was not perfected. The Bank argues that the Uniform Commercial Code’s system of “notice filing” was designed to assure that minor errors in the information provided on the financing statement would not defeat the perfection of a security interest. Since the bankrupt here is a close corporation located in a small town, the bank contends that a filing under the name of John and Mayella Lintz, the principal owners, directors and officers of the corporation, was sufficient to provide notice of the Bank’s security interest to other creditors in the community.
Judge Brooks concluded, however, that the Bank’s failure to include the correct name of the debtor corporation in the financing statement was seriously misleading because subsequent creditors had to depend upon a government official to search state records for the financing statement. See Anderson, Uniform Commercial Code, § 9 — 402:28 (1971); Ind.Adm.Rules and Reg. §§ 26-1-9-407-1 to 9. As a duly constituted corporation, Lintz West Side Lumber, Inc., is a legal entity separate and distinct from John and Mayella Lintz (whose names appear on the financing statement). A creditor would ordinarily, and could reasonably, assume that corporate assets would not be encumbered by a security interest filed under the names of these individuals despite the similarity in the names. Unless a creditor requested a search for the security interests held by others in the Lintz’ personal property, the Bank’s security interest would not be found. Under these circumstances, we cannot say that the names of the debtors were sufficiently similar to provide a creditor or official searching the records on behalf of a creditor with reasonable notice of the Bank’s security interest.[7]
*792 The Bank’s argument that the security agreement was entered in good faith and without intent to defraud creditors does not alter this result. The bank’s good faith is not at issue here. Moreover, good faith is only a necessary, not a sufficient, condition for perfection under the Uniform Commercial Code.
The Bank’s allegation that no creditor in this case was actually mislead is similarly without merit. The district court noted that “Section 70(c) of the Bankruptcy Act clothes the trustee with the ‘status of an ideal, imaginary creditor, irreproachable and without notice, and arms him with every conceivable right and power which under the applicable state law would be available to the most favored creditor who might have acquired a lien on the bankrupt’s properties by legal or equitable proceedings.’ Collier Bankruptcy Manual, Trustees and Receivers in Bankruptcy Handbook, § 13.-001; J. White and R. Summers, Handbook of Law Under the Uniform Commercial Code, § 24-3 page 867 (1972).” In re Lintz West Side Lumber, No. EV 79-205-B (Bankr.Ct. Oct. 10, 1980). The district judge, an expert in bankruptcy matters and presumably in the mechanics of perfection of security interests in personal property in Indiana, found that the trustee, as an ideal, hypothetical creditor of the bankrupt, can be considered to have been prejudiced by the Bank’s seriously misleading financing statement. See In Re Thrift Shoe, 502 F.2d 1211 (9th Cir. 1974).[8] After reviewing the record in this case, we are not persuaded that this finding is clearly erroneous. The order granting the trustee’s petition to set aside the July 18 abandonment order is therefore affirmed.

. These proceedings were commenced prior to October 1, 1979, and therefore continue to be governed by the Bankruptcy Act of 1898 as amended, notwithstanding the subsequent enactment of the Bankruptcy Code. Pub.L. 95-598 § 403(a).

. Section 39(c) of the Bankruptcy Act provides:
A person aggrieved by an order of a referee may, within Ten (10) days after the entry thereof or within such extended time as the court upon petition filed in such Ten (10) day period may for cause shown, file with the referee a petition for review of such order by a Judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained and the alleged errors in respect thereto. Unless the aggrieved persons shall petition for review of such order within such Ten (10) day period, or any extension thereof, the order of the referee shall be final. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the Court upon such terms as will protect the rights of all parties in interest.
11 U.S.C. § 67(c) (1978).

. Any suggestion by the Bank that the 1960 amendment to Section 39(c) places a limitation on the power of the bankruptcy judge to reconsider his own orders is without merit. See In re Meter Maid Industries, Inc., 462 F.2d 436, 439 (5th Cir. 1972); In re Brendan Reilly Associates, Inc., 372 F.2d 235, 239 (2d Cir. 1967).

. In Re Roberts, 460 F.Supp. 88 (N.D.Ga.1978), did not involve a direct attack on an order authorizing the abandonment of property and therefore is not apposite to the instant case. It is noteworthy, however, because the court found that the bankruptcy judge had jurisdiction to rule on the title to abandoned property. In Roberts, a creditor of the bankrupt filed a complaint in bankruptcy court to determine the dischargeability of a debt. The bankrupt argued that certain property in dispute had been abandoned by the trustee and as a result, the bankruptcy court lacked jurisdiction over the creditor’s complaint. But the bankruptcy judge cancelled the recorded warranty deed on the abandoned property (to the bankrupt) and ruled that the creditor had the right to immediate possession of the property. On appeal, the district court concluded that the bankruptcy judge could not have reached the dischargeability issue without making a determination as to title and that cancellation of the instruments of title was necessary in order to enforce the findings of the bankruptcy judge. Thus, the abandonment order in Roberts was not irrevocable and failed to deprive the bankruptcy court of jurisdiction to determine the creditor’s claim.

. Revocation of the abandonment order in In Re Webb, 54 F.2d 1065 (4th Cir. 1932), would have unduly prejudiced the bankrupt who became the innocent owner of the property upon abandonment. The bankrupt in Webb had secured his indebtedness to a mortgage company by a deed of trust on certain “business property” which was abandoned by the trustee. Following the entry of the abandonment order, the bankrupt filed suit in state court to prevent a foreclosure sale of the property on the grounds that the loans from the mortgage company were usurious. A creditor of the bankrupt petitioned the referee to reopen the case, set aside the abandonment order and direct the trustee to take charge of the “business property.” The referee granted the creditor’s petition, and the district court affirmed. The Court of Appeals for the Fourth Circuit reversed, however, on the ground that “it would be highly inequitable and unjust to deprive the bankrupt of the reward of his diligence and industry in prosecuting the litigation” when the trustee had some knowledge of the usurious nature of the loans prior to the abandonment of the property. Id. at 1068.
In Re Yalden, 109 F.Supp. 603 (D.Mass.1953), did not directly involve the revocation of an abandonment order, but focused instead on the irrevocable effect of abandonment. At a final meeting of the creditors of the bankrupt, the trustee of the Yalden estate orally informed the referee that he was disclaiming title to certain property which had no equity value to the estate. Title to the property thus reverted back to the bankrupt who made tax and mortgage payments on the property in reliance on the oral abandonment. Several years later, the bankrupt sought to remove the cloud on her title caused by the absence of a written abandonment order. The bankruptcy proceedings were reopened and a newly-appointed trustee obtained an order from the bankruptcy court confirming a private sale of the abandoned property to the bankrupt. A creditor of the bankrupt subsequently attempted to set aside this confirmation order in the belief that the abandoned property could thus become part of the bankrupt’s estate and subject to claims by the creditor. The district court concluded, however, that the sale of the abandoned property in this case was a mere formality designed to obtain written confirmation of the bankrupt’s title to the property and refused to set aside the order of the bankruptcy judge approving the sale. The creditor was not unfairly prejudiced by this result because he had not filed a claim in the original bankruptcy proceeding and failed to object to the sale after obtaining permission to file a claim in the reopened proceeding. Moreover, the bankrupt, as the innocent owner of the property following abandonment would have been unduly prejudiced by any holding which permitted the abandoned property to be reclaimed by the bankrupt’s estate.
Similarly, in In re Amm, 130 F.Supp. 73 (E.D. Pa. 1955), the trustee abandoned certain property at a meeting of the creditors by informing the trustee that there was no equity in the property of any value to the bankrupt’s estate. The trustee then agreed to convey the abandoned property to the bankrupt for $100 at a private sale. When the trustee subsequently received a $200 bid on the property, he petitioned for approval to sell the abandoned property to the $200 bidder. The bankruptcy judge granted the petition upon the mistaken assumption that the trustee still had title to the abandoned property. The district court vacated the judgment on the grounds that the property automatically and irrevocably reverted to the bankrupt upon abandonment. Implicit in this holding is the concept that revocation of the abandonment order would unduly prejudice the bankrupt as the innocent owner of the abandoned property.

. The Bank’s claim that Rule 60(b) relief is not available in this case is not persuasive. Although both the trustee and the bankruptcy judge were aware of the Bank’s alleged status as a secured creditor at the time the July 18 abandonment order was entered, there is no indication in the record that either of these individuals knew exactly what information appeared on the financing statement.

. Both In re Platt, 257 F.Supp. 478 (E.D.Pa. 1966) and In re Hatfield Construction Company, 10 UCC RS 907 (M.D.Ga.1971) are thus distinguishable from the instant case. In Platt, the court held that a financing statement filed under the name, Platt Fur Company, would not seriously mislead creditors of the true debtor, Henry Platt. Platt Fur Company, however, was an unregistered trade name for the business of Henry Platt and not a licensed corpo *792 rate entity. In Hatfield, the financing statement securing assets of Hatfield Construction Company, a licensed corporation, was filed under the name of Wayne L. Hatfield. Although the court found that the financing statement was not seriously misleading, there is no indication that a government official was required to perform the search in that case. In addition, in both Piatt and Hatfield, the court affirmed the determination of the bankruptcy judge.

. We find no merit in the Bank’s argument that In re Thrift Shoe Co., 502 F.2d 1211 (9th Cir. 1974) is inapposite. The Thrift Shoe court held that a creditor’s financing statement which failed to give the debtor’s correct trade name was, insufficient to perfect a security interest under California law despite the fact that no creditor was actually misled. Thrift Shoe is thus persuasive authority for that portion of our decision in this case.