**In re Jason P. BARTELS and Jennifer L. Bartels, Debtors.**

**Randi L. Osberg, Trustee, Plaintiff,**

v.

**Jason P. Bartels, Jennifer L. Bartels, and Bank of New York as Trustee for the Certificate Holders of Cwalt 2005–06CB, Defendants.**

Bankruptcy No. 07–14779–7.
Adversary No. 09–344.

United States Bankruptcy Court,
W.D. Wisconsin.

March 2, 2011.

Christopher M. Seelen, Ruder Ware, L.L.S.C., Eau Claire, WI, for Plaintiff.

Mark L. Metz, Leverson & Metz S.C., Milwaukee, WI, for Defendant Bank of New York.

*DECISION AND ORDER DENYING DEFENDANT BANK OF NEW YORK'S MOTION TO DISMISS*

THOMAS S. UTSCHIG, Bankruptcy Judge.

On February 14, 2011, the Court conducted a telephonic hearing in this adversary proceeding on the motion by defendant Bank of New York, as Trustee for the Certificate Holders of CWALT 2005–06CB, to dismiss this adversary proceeding and re-close the case. The bankruptcy trustee was represented by Attorney Christopher M. Seelen, and the Bank of New York was represented by Attorney Mark L. Metz.

This bankruptcy case was filed in November of 2007. After conducting the meeting of creditors, the bankruptcy trustee filed a report of no distribution. The debtors then received their discharge, and the case was closed in February of 2008. In October of 2009, the trustee learned of a possible defect in the first mortgage covering the debtors' real property and moved to reopen the bankruptcy and rescind the no distribution report. After the motion was granted, the trustee filed this adversary proceeding in which he seeks to sell the property. The defendant has moved to dismiss this adversary proceeding and re-close the underlying bankruptcy case, contending that the trustee's efforts to pursue this possible asset come too late.

The debtors apparently acquired the property in question in 1998. A relative conveyed a total of about 7.86 acres to them through two separate transfers. The legal description contained in the second deed covered all of the property described in the first deed plus some additional land. It also specifically excluded the part of the property covered by the first deed. Several years after the debtors acquired the property, they obtained a loan and pledged their property as collateral. It appears, however, that the mortgage did not pick up the land referenced in the second deed. As such, on its face the mortgage does not cover the house or garage located on the debtors' property. Instead, it only includes the land which contains a separate pole building.

No one recognized this defect when the debtors filed for bankruptcy. The debtors listed their real estate in their schedules and indicated that it was encumbered by the mortgage. When the bank filed its motion for relief from the automatic stay, it represented that it had a mortgage on the property and that the mortgage was properly perfected. The trustee did not

object to the motion and an order granting relief from the stay and abandonment of the property was entered in January of 2008. The bank pursued its foreclosure action and finally conducted a sheriff's sale in September of 2009. A third party buyer sought to purchase the property but refused to close the transaction when it became clear that the bank's mortgage did not cover the "house" parcel. Upon learning of this, the debtors' attorney notified the trustee of the problem with the legal description.

The trustee's motion to reopen the case was filed on October 5, 2009. As the bank notes, this was some 18 months after the case was closed. In seeking to dismiss this adversary proceeding, the bank contends that the trustee's abandonment of the property cannot be revoked and that principles of finality justify the immediate termination of this litigation. The bank also suggests that the trustee does not have the power to sell the property free of the lender's lien even if the abandonment could be revoked. In response, the trustee believes that the abandonment of the property can be rescinded and that the deadlines associated with the prosecution of an action to avoid a lien do not apply in this case.

 As the Seventh Circuit has ruled, "abandonment orders are ordinarily irrevocable." *In re Lintz West Side Lumber, Inc.*, 655 F.2d 786, 789 (7th Cir.1981). In reviewing the case law, however, the *Lintz* court also noted:

> But most of these cases involved situations in which the revocation of an abandonment order would unduly prejudice the rights of the innocent owner following abandonment of the property. (footnote omitted) In the instant case, however, the trustee is not attempting to reclaim abandoned property which has undergone an unanticipated increase in value or to unfairly prejudice the purported secured party and owner of the property following abandonment. The trustee is merely attempting to correct the erroneous distribution of property by abandonment to a creditor with a security interest which has subsequently been shown to be unperfected throughout.

*Id.* at 790–91. As a result, if a mistake was made in the original abandonment and the purported secured creditor has not been "unfairly prejudiced," the Seventh Circuit concluded that the bankruptcy court is not precluded from setting aside an abandonment order. *Id.* at 791.

 In the present case, the creditor attempts to distinguish *Lintz* by pointing out that it was decided under the Bankruptcy Act of 1898, the predecessor of the present code, and that the *Lintz* bankruptcy case had not been closed when the trustee sought to revoke the abandonment order. The creditor also notes that in *Lintz* the time to avoid a defective lien had not expired, so other creditors might benefit from the revocation of abandonment. The closure of a case is essentially an administrative act, as is the reopening of a case for the reasons specified in the statute. Nothing in *Lintz* suggests that the closure of the case, or even the length of time, are determinative considerations. As noted in *Rameker v. Berning Garage, Inc. (In re Alt)*, 39 B.R. 902, 904 (Bankr. W.D.Wis.1984), in the Seventh Circuit there are two controlling factors when considering a possible exception to the general rule that abandonment is irrevocable. Put simply, "The abandonment must have been an inadvertent error and the parties must not have been unduly prejudiced." *Id.*

 The parties dispute whether *Lintz* was decided under Fed. Rule Bankr.P.

9024, which makes Fed.R.Civ.P. 60(b) applicable in bankruptcy proceedings. Admittedly, the Seventh Circuit's reference to Rule 60(b) does not clearly delineate how the rule might be applied to abandonment orders. However, the court did observe that "[i]f a mistake has been made, it should be corrected, if the correction is not unfairly prejudicial to innocent parties." 655 F.2d at 791. This characterization comports with the trustee's reference to Rule 60(b)(5), which permits an order to be revoked if "applying it prospectively is no longer equitable." Rule 60(b)(5) is not subject to the one-year restriction of Rule 60(c). Consequently, the 18–month gap between the abandonment and the request for revocation is only relevant to the extent that the creditor—or other parties— are "unfairly" prejudiced.

In both *Lintz* and *Alt*, the assets were scheduled and the trustee had access to information about them. In *Lintz*, the trustee subsequently concluded that the creditor's financing statement was deficient because it had been filed under the names of the company's principals rather than the debtor itself. In *Alt*, the trustee apparently overlooked a possible preference action. As the court observed in *Alt*. "Though possibly due to carelessness (in both instances the information was available to the trustee before the abandonment), the abandonment was mistaken." 39 B.R. at 904. In the present case, the debtors scheduled the property. After the property was abandoned, the trustee learned that there was a problem with the legal description in the mortgage. Under the cited authorities, this certainly qualifies as an "inadvertent error." *Id.*

In addition, there is no suggestion that the property has undergone an unanticipated increase in value, or that the trustee is attempting to unjustly reclaim an asset at the expense of an "innocent" party after the abandonment of the property. The only prejudice the creditor can articulate is the difficulty it had in the foreclosure process, but with the possible exception of the aborted sheriff's sale, those difficulties would have arguably arisen anyway. For example, had the trustee not abandoned the property, the creditor would still probably have been required to insure and maintain the property in order to protect whatever interest it might have held. Certainly the estate would not have had the funds to do so. While the Seventh Circuit did not clearly articulate what might constitute "unfair prejudice," this Court cannot find that the creditor significantly altered its position in reliance upon the abandonment order, nor that it is an "innocent party" who might suffer harm unjustly if the abandonment order is revoked. The creditor will still have to resolve the problem with the mortgage, and there is no unfair prejudice associated with doing so in this case. In fact, if the creditor's mortgage is indeed defective, it is far more likely that other creditors would be prejudiced by an unfair distribution of the debtor's estate.

As the trustee's request to revoke the abandonment order may be properly granted under *Lintz*, the remaining question is whether the case should nonetheless be dismissed because the trustee cannot pursue the property in any event The creditor contends that the trustee's rights as a hypothetical judgment creditor or bona fide purchaser of the property have expired. Further, the creditor suggests that it would be possible for its mortgage interest to be reformed under Wis. Stat. § 847.07, and that any "debtor-derived" rights the trustee might assert are subject to this right to have the legal description corrected. The trustee appears to concede that the deadlines under 11 U.S.C. § 546(a) might impact his ability to pursue avoidance of an interest, but argues that

this case does not involve the avoidance of a defective or unrecorded mortgage interest. Instead, this is a situation in which no security interest was conveyed, and the trustee believes he is free to sell the unencumbered real estate under § 363(f). In the alternative, the trustee requests that the limitation periods found in § 546(a) should be equitably tolled.

The Court agrees with the trustee that these issues should be joined after further discovery has taken place, and after the parties have more fully briefed the issue of equitable tolling of any claim under § 544. Consequently, those issues are deferred pending further order.

Accordingly,

IT IS ORDERED that the defendant's motion to dismiss is denied. The parties shall complete discovery by August 10, 2011, and an adjourned pretrial conference will be held on August 16, 2011, at 10:00 a.m.