In re Charles Wayne MOTLEY, d/b/a Bo's Action, Debtor.

Charles A. HICKMAN, Plaintiff,

v.

FIRST STATE BANK OF CORDELE and Robert T. Hurt, Jr., Defendants.

Bankruptcy No. 80–00009–AMER.
Adv. No. 80–0022–AMER.

United States Bankruptcy Court,
M. D. Georgia,
Americus Division.

March 24, 1981.

Pamela M. Richards, Warner Robbins, Ga., for plaintiff.

Robert H. Revell, Jr., Albany, Ga., for defendant/Bank.

James W. Hurt, Cordele, Ga., for defendant/Robert T. Hurt, Jr.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALGIE M. MOSELEY, Jr., Bankruptcy Judge.

Real estate was abandoned by Trustee and not claimed as exempt by Debtor. Holder of second security deed obtained relief from stay. Holder of first security deed foreclosed without obtaining relief from stay. Herein, foreclosure deed by holder of first security is set aside as being in violation of automatic stay.

## FINDINGS OF FACT

1. Debtor filed a voluntary petition in bankruptcy on February 29, 1980, and the stay under 11 U.S.C. § 362 automatically went into effect.

2. On the date of bankruptcy, February 29, 1980, the Debtor owned 7.5 acres of real estate in Dooly County, Georgia subject to two security deeds.

3. First State Bank of Cordele [Bank] was the holder of the first security deed and so identified in the schedules of the Debtor.

4. Charles A. Hickman [Hickman] was the holder of the second security deed and so identified in the bankruptcy schedules. Hickman's security deed also contained two other tracts of real estate.

5. Bank and Hickman each received notice of the pending bankruptcy mailed on March 12, 1980 from the Office of the Clerk of the Bankruptcy Court.

6. On April 9, 1980, the Trustee abandoned his interest in said real estate and filed a No Asset Report.

7. On June 23, 1980, Hickman, as Plaintiff, filed a "Complaint for Relief from Automatic Stay and Other Relief" wherein Motley, the Debtor, was Defendant.

8. On July 14, 1980, a Consent Order was entered modifying the automatic stay and authorizing Hickman to foreclose his interest in the 7.5 acres and the other parcels of real estate.

9. Except for this Order of July 14, 1980, the automatic stay at all times remained in effect.

10. Hickman foreclosed under the powers of sale in his second security deed on August 5, 1980 and recorded the foreclosure deed on August 15, 1980.

11. Bank, without filing a complaint for relief from the automatic stay, foreclosed under the powers of sale in its first security deed on August 5, 1980 and recorded the foreclosure deed to Defendant, Robert T. Hurt, Jr., on September 4, 1980.

12. On September 12, 1980, Plaintiff, herein Hickman, filed a complaint to set

aside the August 5, 1980 foreclosure of Bank.

13. On December 4, 1980, Bank filed a Motion to Annul the Automatic Stay. This was the first relief from the automatic stay sought by Bank, and it should have been by complaint rather than by motion.

14. Should Plaintiff fail to prevail on his complaint to set aside the foreclosure of Bank, under Georgia law the foreclosure deed of Bank would take precedence over the foreclosure deed of Plaintiff.

15. The grantee in the foreclosure deed of Bank was Defendant, Robert T. Hurt, Jr., and he adopts the Bank's contentions in this proceeding. The grantee in the foreclosure deed of Hickman was Hickman himself.

16. The case is not closed or dismissed, and no discharge has been granted or denied.

Plaintiff Hickman alleges that Bank failed to notify him of its intention to foreclose, and because of this the bidding was chilled and he would have bid more than the $5,118.49, the sale price at Bank's foreclosure sale. Hickman alleges that the sale price was grossly disproportionate of the property's true value. Because of the conclusions reached herein, these allegations are immaterial.

## CONCLUSIONS OF LAW

1. 28 U.S.C. § 1471(e) is as follows: "The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case."

2. The automatic stay under 11 U.S.C. § 362 "operates as a stay applicable to all entities." 11 U.S.C. § 362(a). Entities is defined at 11 U.S.C. § 101(14) and "person" therein is defined at 11 U.S.C. § 101(30).

3. Bank is an "entity" to which the stay under 11 U.S.C. § 362(a) is applicable.

4. The stay does not terminate as to all entities upon the abandonment of the real estate by the trustee.

5. Upon abandonment by the trustee the real estate was no longer property of the estate. 11 U.S.C. § 554.

6. The trustee having abandoned the real estate, the stay of an *act against property of the estate* was terminated. 11 U.S.C. § 362(c)(1).

7. The stay of any other *act*, i. e., any other act excluding an *act* against property of the estate, is continued until the earliest of the case being closed or dismissed or a discharge is granted or denied. 11 U.S.C. § 362(c)(2).

8. Upon abandonment of the real estate by the trustee, the interest of the trustee reverts to the debtor.

9. The real estate having reverted to the debtor, the stay under 11 U.S.C. § 362(a)(5) continued after abandonment by the trustee because none of the events have occurred which would terminate the stay under 11 U.S.C. § 362(c)(2).

10. The foreclosure by Bank was in violation of the automatic stay under 11 U.S.C. § 362(a), and the foreclosure of Bank should be set aside.

11. If Bank's foreclosure were to be allowed to stand, Bank and Hurt would reap a benefit from a violation of the automatic stay imposed by 11 U.S.C. § 362(a).

12. Bank must follow orderly procedures, such as filing a complaint for relief from the automatic stay, before acting against any property within the jurisdiction of the bankruptcy court.

## ORDERLY PROCEDURE

■ This Bankruptcy Court has exclusive jurisdiction of all property of the Debtor as of the commencement of the case. Such jurisdiction is provided for in 28 U.S.C. § 1471(e) as follows:

"The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case."

In addition to this, 11 U.S.C. § 362(a) provides for an automatic stay against all

entities from the time a petition is filed who would, among other things, take any action against property of the debtor or property of the estate. It would appear that 11 U.S.C. § 362, the Automatic Stay, was enacted to supplement and aid the grant of exclusive jurisdiction to the bankruptcy court in 28 U.S.C. § 1471(e). 11 U.S.C. § 362(c) provides for termination of the automatic stay. Orderly procedure has been provided in 11 U.S.C. § 362(d) for relief from the automatic stay. The Bank has failed to avail itself of the orderly procedures available to it. Instead, it chose self-help and proceeded to foreclose its security deed without authority from the Bankruptcy Court. In the instant case, the Court is primarily interested in enforcing the orderly procedures provided by Congress.

Although significantly different on its facts, the Court in *First National Bank of Portsmouth, N. H. v. Cope*, 385 F.2d 404 (1st 1967) was also interested in orderly procedure. The principles enunciated in the *Cope* case would be applicable here, as both the *Cope* case and the instant case involved the jurisdiction of the bankruptcy court. As in *Cope*, we are not dealing with the right of Bank for relief. Had the Bank filed a complaint for relief from stay it might well have been entitled to relief; however, this does not mean that Bank was permitted to exercise self-help. As stated in *Cope*, it should require but little imagination to envisage the serious consequences to orderly, and, indeed, effective bankruptcy administration that would ensue from the recognition of the principle advocated by Bank. Every creditor who believed, albeit mistaken, that he had a right to property within the jurisdiction of the court, and perhaps some who did not believe it but who were willing to take the risk to improve their position, would seize that property. The requirement that even those who are correct in their belief that they are entitled to property should have to go through orderly proceedings and suffer consequences if they do not is a small price to pay. Even when the creditor's position is absolutely correct, he cannot be permitted to exercise self-help.

"As an ordinary rule, the non-debtor party should when in doubt assume that the stay applies and seek relief by appropriate proceedings in the bankruptcy court. Ample means for prompt and informal relief are present in 362 and elsewhere in the Code." Collier on Bankruptcy, 15th Ed., Vol. 2, p. 362–33, ¶ 362.04.

In the instant case, we are in the serious consequences envisioned in *Cope* where the holder of the first security deed exercises self-help to the disadvantage of an orderly procedure and improves its position. The orderly procedures established by Congress must be followed, and to condone Bank's foreclosure without court approval violates those orderly procedures. To condone Bank's foreclosure would be giving court approval to the Bank's self-help improvement of its position over the holder of the second security deed who refrained from self-help and followed orderly procedures in requesting relief from the automatic stay. Bank should have availed itself of the means provided by the Code, in particular 362(d), for relief from the automatic stay.

## AUTOMATIC STAY

█ Construction of the new Bankruptcy Code as it relates to the automatic stay and abandonment of property is different from the old Bankruptcy Act. In the latter, abandonment by the trustee terminated the stay against property as to all entities. In the former, this is not so because when the trustee abandons property it reverts to the debtor and the automatic stay in 11 U.S.C. § 362(a)(5) continues in effect because 11 U.S.C. § 362(c)(1) includes only property of the estate and not property of the debtor. The property of the debtor is relieved from the automatic stay only by 11 U.S.C. § 362(c)(2). In a complaint for relief from the stay the debtor should be made a party defendant together with the trustee if the trustee has not filed his abandonment.

█ It should be observed in the first words of 11 U.S.C. § 362, Automatic Stay,

that the stay "operates as a stay, applicable to all entities." Entities is all inclusive and is defined in § 101(14). 11 U.S.C. § 362(c)(1) provides that the stay of an act against *property of the estate* continues until such property is no longer property of the estate, and in § 362(c)(2), the stay of any other act continues until the happening of identified events—none of which have occurred in the instant case. On the abandonment by the trustee of the real estate in question, it was no longer *property of the estate*, but this does not totally terminate the stay because the word "and" carries over to number (2). The trustee in fact, has abandoned the property, and it is no longer property of the estate, but it does not follow that the Bank may proceed to foreclose without being relieved by the Court from the automatic stay. (2) says the stay of any "other act," and this encompasses more than that which was in (1). The stay in (2) is not confined to acts against property *of the estate*. The act in (2) refers to subsection (a), and (5) of subsection (a) is as follows:

"(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; "

In this (5), the stay refers to an act against property *of the debtor*. It, therefore, follows that even though the real estate has been abandoned by the trustee, it continues as property *of the debtor*, and the stay continues in effect.

"The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that." S.Rep.No. 989, 95th Cong., 2nd Sess., p. 49, (1978), and similarly H.R.Rep.No. 595, 95th Cong., 1st Sess., p. 340, (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5835.

"Paragraph (5) stays an act to create or enforce a lien against property of the debtor, . . . to the extent that the lien secured a prepetition claim." S.Rep.No. 989, 95th Cong., 2d Sess., p. 50, (1978), and similarly H.R.Rep.No. 595, 95th Cong., 1st Sess., p. 341, (1977), U.S.Code Cong. & Admin.News 1978, p. 5836.

"Subsection (c) of section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate when the property ceases to be property of the estate, such as by sale, abandonment, or exemption. It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor." S.Rep.No. 989, 95th Cong., 2d Sess., p. 52, (1978), and similarly H.R. Rep.No. 595, 95th Cong., 1st Sess., p. 343, (1977), U.S.Code Cong. & Admin.News 1978, p. 5838.

Property in (5) of 11 U.S.C. § 362(a) would include abandoned property. Collier on Bankruptcy, 15th Ed., ¶ 362.04[5], p. 362–34. Property which has been abandoned will be property of the debtor, protected by the stay of section 362(a)(5) until the stay expires under § 362(c)(2) or is terminated under subsections (d), (e), or (f). Collier on Bankruptcy 15th Ed., ¶ 362.06, p. 362–43.

### ABANDONMENT OF PROPERTY OF THE ESTATE

There should be some discussion of 11 U.S.C. § 554, Abandonment of Property of the Estate as the parties have mentioned it in their briefs. We are only concerned with subsection (a):

"(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate.

(b) On request of a party in interest and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate.

(c) Unless the court orders otherwise, any property that is scheduled under section 521(1) of this title and that is not administered before a case is closed under section 350 of this title is deemed abandoned.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under section (a) or (b) of this section and that is not administered in the case remains property of the estate."

In (a) and (b) the emphasis is upon the trustee, not the court, abandoning property of the estate. In (a), absent objection, the court is not involved; in (b) the court is involved. It is only upon the request of a party in interest in (b) that the court is involved and then only to order the trustee to abandon property of the estate. We construe these subsections to mean that in (a), absent objection, the trustee may abandon property of the estate without any order or approval of the court, and in (b) the trustee is ordered to abandon property of the estate. In (b) it is not the court that abandons property of the estate, but the trustee when ordered by the court. This is consistent with the intent of Congress oft repeated in the legislative history that the court not be involved in the administration of estates. For example:

"Under the proposed system, the bankruptcy judges will be handling only judicial matters in bankruptcy cases." H.R. Rep.No. 595, 95th Cong., 1st Sess., p. 88; also at p. 107, "These changes in the present bankruptcy administrative system will accomplish the separation of judicial and administrative functions currently performed by the bankruptcy judges. The judges will become passive arbiters of disputes that arise in bankruptcy cases." Also at page 108, "In sum, the bankruptcy judge will be separated from administration of the case, and his duties will be solely judicial."

11 U.S.C. § 554(a) does provide for abandonment by the trustee, not the court, after "notice and a hearing." "Notice and a hearing" means, according to 11 U.S.C. § 102(1), Rules of Construction, as follows:

"In this title—

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act; "

Subsection (A) leaves wide discretion as to what notice is appropriate in particular circumstances. (B) authorizes an act without an actual hearing. Under the old Act in this jurisdiction this Court was required to spend valuable time and effort approving abandonment of property. At an early date after the new Code went into effect a local rule was adopted as follows:

"16. Immediately following the 341(a) meeting of creditors, a hearing will be held regarding abandonment by the trustee of all scheduled property (§ 554) and if there are no objections to the abandonment of any of the scheduled property filed with the trustee at said hearing, then when the trustee files his no asset report, he may include thereon an abandonment of such property as he deems appropriate in the circumstances, and upon the filing of said report, the property shall be deemed to have been abandoned."

In this locale under the old Act most scheduled property of the debtor was so highly encumbered that it was seldom, indeed very rare, that there was sufficient equity in property upon which the trustee could realize funds for distribution to creditors. When the new Code went into effect it was apparent that all of the prior time and effort required of the court in the abandonment of property could be eliminated. It was the intent of Congress in the new Code

to take the court out of administration and part of the administration under the old Act involved the court and the Bankruptcy Clerk's Office with numerous notices and orders related to abandonment of property. Experience locally showed that there was a lack of creditor interest, and numerous notices were mailed from the Clerk's Office which never generated any response from creditors. This lack of creditor interest was identified as a "dearth of creditor participation." H.R.Rep.No. 595, 95th Cong., 1st Sess., p. 88 (1977) and at page 89, U.S.Code Cong. & Admin.News 1978, p. 6050 "... creditor control of bankruptcy cases has become a myth in all but the largest cases."

Under the new Code with the local rule above identified there is full compliance with the requirement in 11 U.S.C. § 554(a) that there be "notice and a hearing," as that phrase is construed in 11 U.S.C. § 102(1). In fact, the local rule goes further than required as it notifies all creditors of a hearing on abandonment of all *scheduled* property. Notice of the hearing is given in the notice of § 341(a) meeting of creditors. If no creditor objects to the abandonment of any property, the trustee when satisfied that there is no value to the estate is at liberty to abandon, without order or approval of the court, all or any scheduled property. The experience under the new Code is the same as under the old Act in that creditors do not respond to the notice. In the vast majority of the cases the trustee shortly after the § 341(a) meeting of creditors files his no asset report, and contained therein is the abandonment of all scheduled property.

In the instant case the trustee did file his no asset report stating that no one appeared objecting to the abandonment of any property at the abandonment hearing and that he abandoned and disclaimed all scheduled property of the debtor. The requirement of notice and hearing having been complied with, no objections to abandonment having been filed and the trustee having abandoned the real estate, the real estate was no longer property of the estate, and no approval or order of abandonment is required of the court.

"This concept, embodied in the phrase 'after notice and a hearing', will free the judge from ruling on the many *undisputed administrative decisions* that must be made in a case, and will involve the judge only when there is an *actual dispute to be resolved.* It should eliminate the need for continual requests for instructions by the trustee, and should significantly reduce, if not eliminate, the amount of ex parte contacts currently required between the bankruptcy judge and the trustee." (Emphasis added).

H.R.Rep.No. 595, 95th Cong., 1st Sess., p. 108, U.S.Code Cong. & Admin.News 1978, p. 6069.

It appears that 11 U.S.C. § 554(a) is carefully worded so as to avoid participation by the court in the administrative matter of abandoning property of the estate where there is no "actual dispute to be resolved." Thus, abandonment by the trustee in the instant case is an "undisputed administrative" matter, and there being no "actual dispute to be resolved," no order or approval from the court of abandonment by the trustee is necessary and the real estate is no longer property of the estate.

In the Pre-trial Order suggested to the Court and signed by counsel for each of the parties there were no issues of fact and counsel have agreed that the Court decide the issues of law without a trial. The issues of law as stated in the suggested Pre-trial Order are:

1. Was it necessary for the First State Bank of Cordele to have the automatic stay lifted prior to foreclosure? We have answered this in the affirmative.

2. Is the foreclosure of Bank conducted without having the stay lifted a valid foreclosure? We have answered this in the negative.

3. Should the foreclosure of the First State Bank of Cordele be set aside? We have answered this in the affirmative.

4. Based upon the facts and circumstances of this case, should this Court annul the automatic stay as to the First State Bank of Cordele as authorized by 11 U.S.C. § 362(d)? We have answered this in the negative. However, this does not mean

that Bank is prohibited from seeking relief from the stay upon the filing of a proper complaint.

5. Does a junior lienholder have standing to complain of an alleged violation of the automatic stay provisions by a senior lienholder absent harm or injury to the junior lienholder proximately caused by the violation of the automatic stay? In the instant case there is no absence of harm or injury to Plaintiff. Further, as shown above, there has been an encroachment upon the jurisdiction of the Court and a violation of the automatic stay. As suggested in *Collier* above, prompt relief is available, and it is better to assume that the stay applies. The question seems to imply that if there had been no second security deed Bank could have foreclosed with impunity. None of the events in 11 U.S.C. § 362(c)(2) had occurred, and if there were no second security deed, the real estate continued in the jurisdiction of the Court and the automatic stay continued in effect and Bank would be required to seek relief from the stay.

An Order is entered simultaneously herewith.