In the Matter of Mack L. KILLEBREW
and Delores B. Killebrew, Debtors.

Mack L. KILLEBREW and Delores B.
Killebrew, Appellants,

v.

Charles A. BREWER, Appellee.

No. 89–4400
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 1, 1989.

Paul E. Nunu, Daphne Levey, Houston, Tex., for appellants.

Howard C. Ross, Jr., Jackson, Miss., for appellee.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

KING, Circuit Judge:

Plaintiff-appellants, Delores and Mack Killebrew (collectively, the "Debtors"), filed for Chapter 7 bankruptcy in 1985. In 1987, they filed the complaint in the instant proceeding, seeking the turnover of certain assets from defendant-appellee, Charles Brewer, the bankruptcy trustee (the "Trustee"). The bankruptcy court found that the Trustee had abandoned the assets

in question, but that he should be allowed to revoke such abandonment. The district court for the Southern District of Mississippi affirmed the bankruptcy court's findings. The Debtors appeal from this holding. We affirm the judgment of the bankruptcy court, but base our holding on different grounds: We find that the Trustee never abandoned the bankruptcy estate's interest in the assets in question.

### I.

On February 27, 1985, plaintiff-appellants Mack L. Killebrew ("Killebrew") and Delores B. Killebrew filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Mississippi.[1] 11 U.S.C. § 101 et seq. In accordance with the Bankruptcy Code, the Debtors filed a "Statement of Financial Affairs for Debtor not Engaged in Business" and schedules of property, income and expenditures, and liabilities. In the personal property schedule and the summary of debts and property, the Debtors listed an interest in a trust established under Killebrew's father's will (the "trust") as an asset, but no value was given for such interest.[2]

Killebrew was one of four beneficiaries of the trust. The trust instruments appointed the First National Bank of Holmes County the testamentary trustee (hereinafter, the "Testamentary Trustee"). The Testamentary Trustee was to hold the corpus of the trust (farmland) and lease this land to one of Killebrew's brothers until December 1986.[3] Between October 1986 and the end of December 1986, the brother

leasing the land was given the first option to buy the land. After this time, if he did not purchase the land, it was to be sold to an outside buyer. In either event, at the time of the sale, the proceeds and any remaining income were to be distributed equally among the four beneficiaries.[4] Approximately one year before filing bankruptcy, Killebrew obtained a $50,000 loan from Guaranty Bank and Trust Company ("Guaranty"). As security for this loan, he assigned his "right, title and interest ...,  including the right to all income" in and to the trust to Guaranty. For additional security—in case he died before the trust was dissolved—Killebrew obtained a $100,000 life insurance policy.

On March 12, 1985, an "Order for Meeting of Creditors and Fixing Times for Filing Objections to Discharge and for Filing Complaints to Determine Dischargeability of Certain Debts, Combined with Notice Thereof and of Automatic Stay" (the "combined notice/order") was issued by the bankruptcy court. This notice set April 16, 1985 as the date of the required section 341(a) meeting of creditors.[5] The combined notice/order also stated that the Trustee possessed the power to abandon property and that he would announce his plans in relation to the Debtors' property at the section 341(a) meeting.

The section 341(a) meeting occurred on April 16, 1985. At the meeting, the Trustee questioned Killebrew about his understanding of the value of the trust and the nature of his interest in it. The Trustee also discussed the value of the trust with an acquaintance of his who attended the

---

1. Although a discharge was issued to the Debtors on July 2, 1985, the case was never closed.

2. Although we refer to the funds at issue in this case as the proceeds of a trust, this is a simplification. The proceeds actually come from the final distributions of two trusts, one created in the will of Killebrew's father and one established in Killebrew's mother's will. The trusts held undivided interests in real property, contained complementary terms, and shared the same testamentary trustee. Because all of the parties have treated the two trusts as one, references in this opinion to "the trust" are to the combined trusts.

3. At the discretion of the Testamentary Trustee, income from the rental of the land was distributed in equal shares among all beneficiaries annually.

4. If a beneficiary did not live until the time of distribution, his or her share was to be distributed, per stirpes, to his or her children.

5. Section 341(a) states:
   Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.
   11 U.S.C. § 341(a).

section 341(a) meeting on behalf of another creditor. On the same date, Guaranty made a motion for relief from the automatic stay provisions of section 362 of the Bankruptcy Code. Notice of this motion was given to creditors and a hearing on such motion was set for May 15, 1985. The bankruptcy court granted the motion on May 24, 1985. Subsequently, the Testamentary Trustee paid Killebrew's share of the trust income annually to Guaranty.

In early 1987, the Trustee learned that the land held in trust was being sold. Accordingly, he wrote to the Testamentary Trustee and claimed Killebrew's share of the proceeds. Subsequently, on June 16, 1987, the Trustee filed a complaint requesting turnover of the trust proceeds that would otherwise be given to Killebrew. In its answer to this complaint, the Testamentary Trustee stated it had received $135,-352.55 in trust proceeds from the sale of the real estate for the account of Killebrew on May 18, 1987. Pursuant to Guaranty's security agreement and following "written authority from the Trustee herein dated May 7, 1987, [the Testamentary Trustee] paid to said secured party the sum of $48,-704.95 from the funds of the said [Killebrew]." A tax lien in the amount of $2,714.75 was also paid from the trust proceeds. This left the Testmentary Trustee holding a sum of $83,932.85. The bankruptcy court issued an order on July 31, 1987 mandating the turnover of the remaining trust proceeds to the Trustee—subject to any claims by the Debtors.

On October 20, 1987, the Debtors filed a complaint seeking the turnover of these funds from the Trustee. On October 28, 1987, the Debtors filed an amended complaint seeking the same. Debtors predicated their complaint on the claim that the proceeds were never property of the bankruptcy estate [6] and, additionally, that the Trustee had abandoned any possible interest in the trust by order of the court entered on May 24, 1985. Furthermore, they claimed that the trust did not vest in Killebrew until early 1987. The Trustee answered by denying these allegations "due

to the misrepresentations of debtor in connection with this trust." However, in his memorandum brief in response to the Debtors' complaint, the Trustee stated that he had abandoned the trust property, but claimed that he had done so based on representations by Killebrew. He argued that the abandonment should be revoked. This case was heard by the bankruptcy court on August 29, 1988.

The bankruptcy court entered an opinion and order in favor of the Trustee on September 14, 1988. 101 B.R. 471. The bankruptcy court found that the Trustee had abandoned the estate's interest in the trust on or about May 24, 1985, "pursuant to representations by the debtors that the interest in the trust was purely contingent, and that if the funds ever were received from the trust, there would be no equity in the estate," but that he should be allowed to revoke this abandonment.

Following this order, the Debtors petitioned the United States District Court for the Southern District of Mississippi for reversal of the bankruptcy court's denial of the Debtors' request to have the remaining proceeds from the trust turned over to them. The district court held that the bankruptcy judge had committed no clear errors of fact in his opinion and adopted his legal conclusions.

Debtors now appeal to this court. On appeal, the Debtors argue that the district court erred in concluding that the bankruptcy court committed no error in finding that the "debtors knew or reasonably should have known there would be equity in the trust. . . ." They also contend that the district court erred in concluding, as a matter of law, that revocation of the Trustee's abandonment of the trust property was justified in the instant case. In rebuttal, the Trustee asserts that he never abandoned the trust interest, but that if he had, revocation would be appropriate. Because we agree with the Trustee's argument and find that abandonment never occurred, we do not discuss the Debtors' arguments, which assume that the issue of abandonment was conceded below and address the

---

**6.** Debtors do not argue this point on appeal to this court.

issue of when abandonment may be revoked.

## II.

■ Although this case has been reviewed on appeal by the district court, at this stage we engage in a review of the bankruptcy court's findings just as we would in an appeal coming from a trial in the district court. *See, e.g., In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1333 (9th Cir.1985) ("Because we are in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision."). Thus, we apply the clearly erroneous standard in reviewing findings of fact by the bankruptcy court, *In re Bleaufontaine*, 634 F.2d 1383, 1389 (5th Cir. Unit B 1981), and decide issues of law de novo. *In re Texas Research, Inc.*, 862 F.2d 1161, 1163 (5th Cir.1989).

■ In the case *sub judice*, we review a finding of abandonment. While there may be circumstances under which findings related to abandonment are reviewed—at least in part—under the clearly erroneous standard,[7] we think that the conclusion reached by the bankruptcy court in this case was a legal conclusion and, therefore, we review it de novo.

## III.

■ In response to the Debtors' arguments on appeal, which assume the Trustee's abandonment of the estate's interest in the trust, the Trustee maintains that he never abandoned such interest. In their reply brief, the Debtors contend that we should not consider this argument because the Trustee conceded this issue below, and, therefore, it is too late for the Trustee to

make this argument. Moreover, in response to the Trustee's analysis of the components of abandonment, the Debtors argue that the combined notice/order, issued prior to the section 341(a) meeting, contained the notice requisite for the abandonment of property and that an "administrative abandonment" was possible.[8] We first address the appropriateness of our consideration of the Trustee's denial of abandonment at this point in the proceedings.

While we sympathize with the Debtors' frustration that the first coherent arguments against abandonment were made at the appellate level, we do not agree that the record shows concession of this point below. Rather, we find that the record—especially the Trustee's testimony—demonstrates the existence of considerable confusion on the part of all parties as to the meaning of abandonment in the context of bankruptcy proceedings. The concept of abandonment appears to have become confused with actions taken to allow Guaranty to realize on its security interest through the lifting of the automatic stay under section 362.[9] 11 U.S.C. § 362. Particularly notable is the following testimony by the Trustee:

I do know that Mr. Killebrew told us that there was not [equity in the trust], though, and we looked after that, and in order to allow the bank [Guaranty] to get paid their security, assigned the abandonment order, which we do frequently with GMAC Ford Motor Credit and other creditors, to allow them to be paid with the understanding if there's any equity after the same is sold, they send it in, and they do send it in.

This is not an unusual situation where a creditor takes the property and sells it and gives the ballots [sic] to us. In this

---

7. *See, e.g., Hill v. Larcon Co.*, 131 F.Supp. 469, 474–76 (W.D.Ark.1955) (decided under earlier version of the Bankruptcy Code, which lacked the specificity of today's code about how to effect abandonment, the district court noted the importance of particular facts of each case, but approvingly quoted Arkansas case finding abandonment a mixed question of fact and law).

8. We note that this argument differs from the Debtors' allegations in their complaint below

that the Trustee abandoned the estate's interest in the trust by order of the court entered on May 24, 1985.

9. Documentation in the record shows that on May 24, 1985 (the day "on or about" which the bankruptcy court found that the Trustee abandoned the estate's interest in the property), the automatic stay was lifted in relation to Guaranty's secured interest in the trust.

particular case, Mr. Killebrew had not claimed any of this trust as exempt. His schedules reflected it appeared that he saw there was no equity in it, and he didn't claim any interest in it, so as far as we were concerned, he had no interest if it was worth something. The trust was such that it could have, it appeared to me to have been easily manipulated.

... The bank had assured me all along that they would notify me when something came down, and I told them to turn the money over to me. If Mr. Killebrew had any interest, then he could come to the court here, and we would determine whether it was his or the estate's.

Although the Trustee's testimony uses the term "abandonment," the context indicates that he is not using it in a manner consistent with the term's meaning under the Bankruptcy Code—i.e., the largely irrevocable removal of property from the estate. *See, e.g., In re Enriquez*, 22 B.R. 934, 935 (Bankr.D.Neb.1982) ("The effect of abandonment by a trustee ... is to divest the trustee of control over the property because once abandoned, property is no longer a part of the bankruptcy estate."); Collier on Bankruptcy ¶ 554.02[2] at 554–6 (15th ed. 1989) ("[U]pon abandonment un-

der section 554, the trustee is simply divested of control of the property because it is no longer part of the estate."). Rather, his testimony refers to an arrangement whereby a creditor is allowed to realize on its security interest and agrees to return anything above that amount to the Trustee. In contrast to abandonment, his testimony contemplates the retention of all rights to the property—beyond the secured interest—by the estate.

The notion of easily revocable abandonment is not in accord with case law on abandonment. *See, e.g., In re Hunter*, 76 B.R. 117, 118 (Bankr.S.D.Ohio 1987) ("The general rule in this area is well settled—once a trustee abandons property, the abandonment is irrevocable."); *In re Enriquez*, 22 B.R. at 935–36 (abandonment held irrevocable, even when property is subsequently found to have greater value than previously believed); *In re Sutton*, 10 B.R. 737, 739–40 (Bankr.E.D.Va.1981); (abandonment irrevocable, irrespective of later discovery that property had greater value than originally realized).[10] Thus, it appears that the Trustee's confusing allusion to abandonment actually refers to the lifting of the automatic stay under section 362.[11] 11 U.S.C. § 362. This action would allow

**10.** Limited exceptions, allowing revocation, exist where the property was "concealed or where the trustee lacks 'knowledge, or sufficient means of knowledge, of its existence.'" *In re Tarpley*, 4 B.R. 145, 146 (Bankr.M.D.Tenn.1980) (quoting *Dushane v. Beall*, 161 U.S. 513, 518, 16 S.Ct. 637, 639, 40 L.Ed. 791 (1896)). Fortunately, however, because we find that no abandonment occurred, we need not decide the difficult question of whether an abandonment could be revoked under the facts of the case at hand.

The exceptions are narrowly construed. For example, in *Enriquez, supra*, the trustee abandoned all property, including an employment discrimination claim shown as a contingent, unliquidated asset. 22 B.R. at 935. When the debtor later received a $6,250 settlement of this claim, the trustee tried to revoke abandonment. *Id.* The bankruptcy court denied revocation because the "creditors and representatives of the estate were put on notice of [the claim's] existence" and, therefore, the abandonment was "knowingly" made. *Id.* at 936; *see also In re Tarpley*, 4 B.R. at 146 (where "the trustee has knowledge that is 'certainly sufficient to put him upon diligent inquiry as to the transaction', [sic] the abandonment is held to have been

knowingly made and hence irrevocable" (quoting *In re Webb*, 54 F.2d 1065, 1067 (4th Cir. 1932)). The absence of any third party whose interest would be adversely affected by revocation of an abandonment is a factor in determining whether a revocation should be permitted. *See, e.g., In re Lintz West Side Lumber, Inc.*, 655 F.2d 786, 791 (7th Cir.1981) (reconsideration of abandonment order and revocation may occur, *inter alia*, "if the correction is not unfairly prejudicial to innocent parties").

**11.** We note that this is the only action documented in the record in relation to the trust during this time period. Moreover, this interpretation of the trustee's testimony is supported by the statements made by the Debtors at the hearing. In handing the bankruptcy judge the exhibit containing the documentation of Guaranty's security interest, counsel for the Debtors stated, "It [the documents establishing Guaranty's security interest] is an attachment to exhibit 9. Exhibit 9 is the motion for abandonment." In fact, exhibit 9 is Guaranty's motion requesting that the court lift the section 362 automatic stay in order to allow it to enforce its security interest and assignment in the trust. The exhibit never mentions abandonment.

Guaranty to realize on its security interest in the manner that it did here, but, again, under the circumstances that obtained here, any funds remaining would be the property of the estate.[12]

As both the Trustee and the Debtors seem to have used the term abandonment in a confusing manner and in reference to documents and processes relating to the lifting of the automatic stay rather than abandonment, we cannot conclude that the Trustee should now be precluded from arguing against a finding of abandonment. A close reading of the record shows that the issue was raised, albeit in a muddled manner, and that the core of the Trustee's position below was not inconsistent with his current argument that abandonment never occurred. Thus, we believe that in arguing that he never abandoned the property, the Trustee simply offers an alternative rationale—supported in the record[13]—for affirming the judgment in its favor below. *Cf. Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957) ("A successful party in the District Court may sustain its judgment on any ground that finds support in the record."); 16 A. Miller, C. Wright, E. Cooper & E. Gressman, *Federal Practice And Procedure* § 3950 (1977) ("[A]ny named party, without filing a separate or cross-appeal, may make or renew in the appellate court any available argument designed to preserve or justify that portion of the judgment favorable to him.").

## IV.

■ Concluding that the Trustee is not barred from arguing that abandonment of the trust did not occur, we now turn to reviewing the legal merit of this claim. Historically, because the Code was silent as to what actions by the Trustee constituted abandonment, courts faced difficult factual determinations in this area. 4 Collier on Bankruptcy ¶ 554.01 at 554-3. However, since its passage, section 554 of the Bankruptcy Code has governed abandonment. Under section 554:

(a) After notice and hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554. This section is implemented by Bankruptcy Rule 6007, subsection (a) of which states in relevant part:[14] "Unless otherwise directed by the court, the trustee ... shall give notice of a proposed abandonment or disposition of property to all

---

**12.** We assume, without deciding, that the Debtors' interests in the trust income and corpus were originally property of the estate since no party argues to the contrary on appeal.

**13.** Although we note that the trustee also referred to abandonment in his pre-hearing brief, we do not find this reference dispositive. Focusing on the trustee's testimony, we note his considerable confusion about this concept and believe that he used the word abandonment in a manner inconsistent with the definition of abandonment under the Bankruptcy Code. In his terms, abandonment in relation to the trust seems only to be used to mean that he ac-

quiesced to allowing a secured creditor to collect on its interest.

**14.** The text of Bankruptcy Rule 6007(b) and (c) state:

(b) Motion by party in interest
A party in interest may file and serve a motion requiring the trustee or debtor in possession to abandon property of the estate.
(c) Hearing
If a timely objection is made as prescribed by subdivision (a) of this rule, or if a motion is made as prescribed by subdivision (b), the court shall set a hearing on notice to the entities as the court may direct.

creditors.... An objection may be filed and served by a party in interest within 15 days of the mailing of notice, or within the time fixed by the court." [15]

As an initial observation, we note that the record in the case *sub judice* contains no documentation indicating the Trustee's abandonment of the trust property. The only evidence of the alleged abandonment is the imprecise language used by both parties at the hearing in the adversary proceeding on this matter and the Trustee's reference to abandonment in his brief before hearing in the bankruptcy court. As discussed, *supra*, however, this language appears to refer to Guaranty's motion to lift the automatic stay and the court order lifting such stay, rather than to abandonment.

The Debtors, in their reply brief, argue that the notice of abandonment required under section 554(a) and Bankruptcy Rule 6007 was met by language included in the combined notice/order sent to creditors before the section 341(a) meeting and that an "administrative abandonment was possible...." We agree that property may be "administratively abandoned" in certain circumstances under the current Bankruptcy Code,[16] but we do not believe that such an abandonment occurred in the instant case in relation to the estate's interest in the trust.

Notice of a proposed abandonment can be incorporated in the notice for the meeting of creditors. Bankruptcy Rule 6007 advisory committee's note. Additionally, the current Bankruptcy Code § 102(1)(A) "leaves wide discretion as to what notice is appropriate in particular circumstances." *In re Motley,* 10 B.R. 141, 146 (Bankr.M.D. Ga.1981) (local rule providing notice in the § 341(a) meeting notice that "[i]mmediately following the 341(a) meeting of creditors, a hearing will be held regarding abandonment by the trustee of all scheduled property (§ 554) and if there are no objections to the abandonment of any of the scheduled property filed with the trustee at said hearing then when the trustee files his no asset report, he may include thereon an abandonment of such property as he deems appropriate ..."). However, in considering the notice given, it is important to recall the reason for such notice: "The purpose of notification to parties in interest is to provide an opportunity for potential opposition to the abandonment of such property to file objections and be heard by

---

**15.** District courts may also make local rules to implement sections of the code. Bankruptcy Rule 9029. However, local rules must be consistent with the federal Bankruptcy Code and Bankruptcy Rules. *Id.; In re Wideman,* 84 B.R. 97, 99 (Bankr.W.D.Tex.1988).

**16.** Although section 554(a) contains reference to abandonment occurring "after notice and hearing" and, thus, implies judicial involvement, section 102 of the Bankruptcy Code is employed in construing this condition. 11 U.S.C. § 102. Section 102(1) states:
In this title—
(1) "after notice and a hearing", (sic) or a similar phrase—
(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
(B) authorizes an act without an actual hearing if such notice is given properly and if—
(i) such a hearing is not requested timely by a party in interest; or
(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act....

11 U.S.C. § 102(1). Thus, if the notice requirement is met, abandonment can occur without judicial involvement. *See* H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 315, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5763, 6272 ("If there is no objection to the proposed action, the action may go ahead without court action."); *In re Trim–X Inc.,* 695 F.2d 296, 300 (7th Cir.1983) ("a trustee may abandon property without involvement of the court if no party in interest objects ..."); *In re Caron,* 50 B.R. 27, 29–31 (Bankr.N.D.Ga.1984) (adequate notice of abandonment must be given, but absent objections there is no need for judicial involvement); *In re Motley,* 10 B.R. 141, 147 (Bankr.M.D.Ga.1981) ("The requirement of notice and hearing having been complied with, no objections to abandonment having been filed and the trustee having abandoned the real estate, the real estate was no longer property of the estate, and no approval or order of abandonment is required of the court."); 4 Collier on Bankruptcy ¶ 554.02[3] at 554–8 ("the trustee may propose to abandon property under subsection (a) [of § 554] after notice and a hearing; unless a hearing is requested, the trustee may abandon the property without a court order.").

the court." *In re Caron*, 50 B.R. 27, 30 (Bankr.N.D.Ga.1984).

The language relied upon by the Debtors as notice appears to be the following declaration in the combined notice/order:

NOTICE IS FURTHER GIVEN that the trustee of this estate is empowered to abandon or sell, at the scheduled meeting of Creditors, movable assets of the debtor. At the meeting, the trustee shall announce which actions he plans to take and which assets are affected thereby. Any objection to the trustee's planned action must be filed within twenty days after the date set for the meeting of creditors. If objection is filed, the matter shall be fixed for hearing by the Court. If no objection is filed, the trustee shall proceed accordingly.

The notification provided here is not adequate as its vague terms would not have placed parties interested in a particular piece of property on notice that they would need to file objections in order to obtain a court hearing. It contains no reference to which property the Trustee intends to abandon and, furthermore, states that the Trustee will reveal his specific plans at the section 341(a) meeting. *Cf. In re Adkins*, 28 B.R. 554, 557 (Bankr.N.D.Miss.1983) (abandonment upheld where notice of § 341(a) meeting stated, "at the [§ 341(a)] meeting the trustee will announce which assets he plans to abandon" and trustee announced abandonment of particular real estate at the meeting).

In the case at hand, assuming, without deciding, that the Trustee needed only to make a decision to abandon and announce it at the section 341(a) meeting, there is no indication that the Trustee made a statement manifesting intent to abandon the estate's interest in the trust at the section 341(a) meeting. In fact, Killebrew's testimony at the bankruptcy court hearing indicates otherwise. During direct examination, Killebrew stated that at the section 341(a) meeting a representative from Guaranty approached the Trustee and expressed interest in seeing the trust abandoned. Killebrew testified that the Trustee responded by smiling and saying, "I reckon you would." [17] Moreover, during the Trustee's cross-examination of him, Killebrew stated that the last thing the Trustee said about the trust was that he would take information—about the value of the trust—provided by one of the creditors at the meeting under advisement. These statements fail as notice of abandonment because they do not indicate that the Trustee intended to abandon the trust interest and, therefore, would not provide an interested creditor with notice that she or he needed to file an objection if she or he opposed such abandonment.

For the above reasons, we do not believe that the Trustee abandoned the estate's interest in the property in question. [18] We conclude that the evidence shows that the only action occurring on or around

17. Killebrew described the discussion that took place at the section 341(a) meeting as follows:

[T]he bank representative in Belzoni [Guaranty's representative] came up with a paper and presented it to Charles Brewer and asked him if he could leave it like it was. He would like to have abandoned it or whatever it was. I didn't understand all of the legal words that went on at the bankruptcy, but since then, of course, I've studied a little bit about bankruptcy, and he asked about abandonment, and Charles Brewer, with a smile on his face, said, "I reckon you would," and that was the way it was left.

18. Because of the Debtors' reliance on the language in the combined notice/order of abandonment, we have focused our analysis on abandonment at the Trustee's impetus, under section 554(a). Abandonment could not have

occurred under section 554(c), however, because, as the parties acknowledge, this bankruptcy case was never closed. Furthermore, although Killebrew testified that Guaranty's representative made a request that the estate's interest in the trust be abandoned (*see, supra,* note 17), there is no evidence in the record to show that the court ordered the Trustee to take such action. Section 554(b), which governs requests by interested parties for abandonment, "specifically calls for an 'order' by the court." *In re Trim–X, Inc.,* 695 F.2d at 300 n. 6; *see also In re Wideman,* 84 B.R. at 99 ("an interested party may seek a court order to compel the trustee to abandon property"); Norton Bankruptcy Law and Practice, *Bankruptcy Rules* 346 (Editors' Comment) (1989–90 ed.) ("if a party in interest requests that the trustee abandon the property, a court order will be required under Code § 554(b).").

May 24, 1985 in relation to the trust was the lifting of the automatic stay under section 362 to allow Guaranty to collect on its secured interest. The order issued in relation to this makes no reference to abandonment and we believe that none occurred. Thus, the net proceeds from the distribution of the trust remain the property of the estate.

## V.

For the foregoing reasons, we AFFIRM the district court's judgment affirming the bankruptcy court's judgment in favor of the Trustee.

AFFIRMED.