In re Jennifer Michelle NAGY, Jeffrey Howard Nagy, Debtors.

Dwayne M. Murray, Trustee for Jennifer Michelle Nagy and Jeffrey Howard Nagy, Plaintiff

v.

Jennifer Michelle Nagy, Jeffrey Howard Nagy, Chase Home Finance and Unknown Party, Defendants.

Bankruptcy No. 05–14225.
Adversary No. 09–1005.

United States Bankruptcy Court, M.D. Louisiana.

July 21, 2010.

Wyndi B. Guillory, Paul Douglas Stewart, Jr., Baton Rouge, LA, for Trustee.

Edwin Scott Hackenberg, Baton Rouge, LA, for Creditor.

Robert V. McAnelly, Baton Rouge, LA, for Debtor.

## MEMORANDUM OPINION

DOUGLAS D. DODD, Bankruptcy Judge.

Plaintiff Dwayne M. Murray, chapter 7 trustee, sued debtors Jennifer Michelle Nagy, Jeffrey Howard Nagy[1] and Chase Home Finance "(Chase")[2] to avoid a transfer under 11 U.S.C. § 549 and to turn over funds under 11 U.S.C. § 542. The trustee cannot avoid the transfer or compel debtor Jennifer Nagy to turn over the funds.

## FACTS

Jennifer Michelle Nagy and Jeffrey Howard Nagy filed chapter 7 on October 13, 2005.[3] Dwayne M. Murray was appointed their trustee. The debtors' schedules and statements filed July 19, 2006 listed on Schedule A their interest in the family home at 40227 Todd Drive in Prairieville, Louisiana. They valued the house at $135,000 and disclosed that it was subject to combined mortgage debt of

---

1. The court severed and temporarily stayed the trustee's claims against Jeffrey Nagy in November 2009 because he was on active duty in the United States Army and protected by the Service members Civil Relief Act, 50 App. U.S.C.A. § 501 *et seq.* (November 17, 2009 Order Severing Defendant and Staying Proceedings, P–59.) Thus this opinion does not address the plaintiff's claims against Jeffrey Nagy.

2. The court approved plaintiff's compromise with Chase and First American Title Insurance Company ("First American"), the issuer of Chase's title insurance. (Order Granting Motion for Approval of Compromise, P–57.) An order entered on July 20, 2010 dismissed Chase from this case. (Order Dismissing Complaint Against Chase Home Finance, LLC, P–84.) The plaintiff never identified the "unknown party" named in the complaint.

3. The debtors filed their petition four days before the effective date of the Bankruptcy Amendment and Consumer Protection Act ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23 (effective October 17, 2005).

$115,500.[4] Though the debtors were entitled to claim $25,000 of the home's value as exempt under La. R.S. 20:1 and Louisiana Constitution article 12, section 9, their original schedule C inexplicably did not claim an exemption for the Todd Drive property. The omission is puzzling in view of the debtors' plan to reaffirm their mortgage debt and retain the home, as their Chapter 7 Individual Debtor's Statement of Intention had disclosed.[5] In any event the record makes plain that the debtors planned to retain their home and pay the mortgage debt after their discharge, which they received on March 27, 2006.

The plaintiff's claims arise out of the post-petition sale of the home without court authority or the trustee's knowledge. The debtors sold the Todd Drive property for $161,000.00 on January 29, 2007.[6] For reasons that no party offered into evidence and so are not part of the record, the title company and notary public closing the sale did not learn that the Nagys had filed bankruptcy before the sale. At the closing Mrs. Nagy received $61,177.27.[7] The trustee did not then know that the debtor had received any of the sales proceeds.

The trustee testified at trial that he had not believed that administering the home would yield significant value for the estate because the cost of selling it would consume the apparent equity. The evidence supports an inference that the trustee reached this conclusion based on an erroneous assumption that the mortgages listed on the debtors' schedules were valid and enforceable. Regardless, his testimony supports a finding that the trustee knew, or should have known, all relevant facts concerning the home and mortgage debt and chose not to administer the immovable property.

Even though the trustee did not pursue any recovery for the estate from the home, he did administer other assets which he sold by public auction for $5,727.70.[8] The

---

4. The debtors' Schedule D (P–18) listed Chase as the first mortgage creditor with a scheduled debt of $99,000, and Whitney National Bank ("Whitney") as the second mortgage holder with a $16,500 debt.

5. On December 20, 2005, a month before the meeting of creditors, the debtors filed an agreement reaffirming their $90,937.66 Chase mortgage debt. Reaffirmation Statement and Agreement (P–7). Jennifer Nagy amended schedule C (P–102) to claim the homestead exemption on March 30, 2010. The court overruled the trustee's objection to the amended exemption on March 28, 2010. The trustee did not appeal that order.

6. January 29, 2007 Act of Cash Sale and Settlement Statement (Exhibit Defense 1 *in globo*, tab 11). Jennifer Nagy signed the closing documents on behalf of both debtors.

7. The January 29, 2007 Settlement Statement (Exhibit Defense 1 *in globo*, tab 12) reflected that Mrs. Nagy received $61,177.27 in proceeds because the closing notary retained enough money to pay only the Chase mortgage debt and not the Whitney debt. No

evidence supported a finding or conclusion that Jennifer Nagy knew of the oversights that led to her receipt of part of the sales proceeds. No party offered evidence detailing this outcome and the improper payment to Mrs. Nagy. The closest the court has come to an understanding of the events is an explanation in Mrs. Nagy's post-trial memorandum, which is not evidence. The memorandum alleged that Chase's first mortgage on the Todd Drive property (which was intended to secure the loan to refinance the debtors' original Whitney mortgage loan) was not recorded. As a result Whitney never released its original mortgage. Whitney received nothing from the sale proceeds: the closing notary paid only Chase, even though it did not hold a recorded mortgage and should have been paid only after Whitney. The trustee has settled his claims against Chase and First American.

8. The property included a computer, television, audio receiver speakers, digital cameras and carpenter tools. See attachments to auctioneer's application for compensation (P–41 in case no. 05–14225).

case proceeded uneventfully to its conclusion. The court ordered the case closed on June 18, 2008 in response to the trustee's final account of distribution and application for closing.[9]

No provision for the Todd Drive property appears in the trustee's final report, his final account, or the order closing the case.

Months after the case closed, the notary who closed the sale contacted the trustee about the Todd Drive property. The trustee learned of the sale, obtained an order reopening the case [10] and filed the complaint that started this adversary proceeding.

## ANALYSIS

The trustee's complaint seeks four types of relief: (1) turnover of the sale proceeds under 11 U.S.C. § 542; (2) avoidance of the sale proceeds payment to Chase and to the debtors as unauthorized post-petition transfers under 11 U.S.C. § 549; (3) avoidance of the transfer of the proceeds to an unnamed immediate or mediate transferee under 11 U.S.C. § 550; and (4) the preservation of the property transferred for the benefit of the estate under 11 U.S.C. § 551. He is not entitled to relief on any count.

### Count 1—The Sale Proceeds Are Not Property of the Estate and Are Not Subject to Turnover Under 11 U.S.C. § 542

■■■ The filing of a bankruptcy petition creates a bankruptcy estate comprising essentially all property of the debtors. 11 U.S.C. § 541(a)(1). The chapter 7 trustee becomes the representative of the bankruptcy estate upon his appointment and qualification, 11 U.S.C. § 323(a), and generally he alone can sell estate property,

providing the bankruptcy court has approved the sale. See 11 U.S.C. § 363(b).

■■■ The Nagys' bankruptcy filing made the family home on Todd Drive property of the bankruptcy estate. 11 U.S.C. § 541(a)(2). Once the Nagys filed bankruptcy they lost their ability to sell their home without the bankruptcy court's approval. However, although the court did not approve the debtors' sale of the home, the $61,177.27 sale proceeds became estate property on January 29, 2007 because they were proceeds of property of the estate. 11 U.S.C. § 541(a)(6). The sale proceeds did not remain estate property, however, because they were abandoned by operation of law when the case closed.

■■■ Abandonment takes place by operation of law when a case is closed under Bankruptcy Code section 554(c), which " 'deems abandoned to the debtor *any* scheduled property of the estate that is unadministered at the close of the case.' " *In re Tadlock,* 338 B.R. 436, 439 (10th Cir.BAP2006) (emphasis in original), *quoting* 5 COLLIER ON BANKRUPTCY ¶ 554.02[7] at 554–11 (15th ed. rev.2002). *See also In re Atkinson,* 62 B.R. 678, 679 (Bankr.D.Nev. 1986) (The trustee can abandon property "simply *by leaving an asset unadministered at the close of the case* ") (emphasis added). Given this, the trustee has a duty to investigate the value to the estate of scheduled property and to decide whether the property should be administered *before the closing of the case. Tadlock,* 338 B.R. at 439 (citation omitted) (emphasis added). Nor does an honest debtor bear responsibility for a trustee's oversight that leads to the abandonment of assets worthy of administration. "A debtor has no duty to inform the trustee of changes in the value

---

9. P–54.

10. January 23, 2009 order reopening bankruptcy case (P–60).

of the property that occur after the petition.... " *Id.* (citation omitted).

■ The evidence does not support a departure from these bright line rules. The Nagys scheduled their interest in the Todd Drive property and listed that it secured mortgage debt of $115,500.[11] Because the trustee had not administered the Todd Drive property by the date the case closed on June 18, 2008, the property—and necessarily its proceeds—were abandoned and left the bankruptcy estate by operation of section 554(c). The abandonment is irrevocable, even in the face of an allegation that the property was worth more than the value the debtors assigned to it in their schedules. *In re Killebrew,* 888 F.2d 1516, 1520 (5th Cir.1989) (citations omitted); *see also In re Parson,* 2007 WL 3306678, at *8 (Bankr.W.D.Va. November 6, 2007) (collecting cases). Courts usually have departed from the general rule of irrevocability of abandonment only if a debtor concealed the property from the trustee or where the trustee lacks knowledge, or means sufficient to gain knowledge, of the property's existence. *Killebrew,* 888 F.2d at 1521, fn. 10, citing *In re Tarpley,* 4 B.R. 145, 146 (Bankr.M.D.Tenn. 1980). Neither exception applies on this record.

■ Once the property was abandoned from the estate, the trustee and estate had no interest in it. "Upon abandonment ... the trustee is ... divested of control of the property because it is no longer part of the estate.... Property abandoned under § 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." *Kane v. Nat'l Union Fire Ins. Co.,* 535 F.3d 380, 385 (5th Cir.2008) (citations omitted). The home and its sale proceeds therefore were abandoned and reverted to the debtors on June 18, 2008, when the case closed without the trustee's having administered the admittedly disclosed asset. The debtors were entitled to dispose of the home sale proceeds as if no bankruptcy was pending and as if the home had never been part of a bankruptcy estate.[12] Had the Nagys never filed bankruptcy, the proceeds of the home sale would have belonged to them. Accordingly, the funds the closing notary public paid to Chase and Jennifer Nagy are not property of the bankruptcy estate and therefore the trustee has no claim to those funds under section 542(a).[13]

## Count 2—The Trustee is Not Entitled to Avoid the Payment of the Sale Proceeds to Jennifer Nagy or to Chase as a Post–Petition Transfer Under 11 U.S.C. § 549

■ Bankruptcy Code § 549(a) empowers a trustee to avoid a transfer of

11. Schedules A, D (P–18 in case no. 05–14225).

12. After the debtors' discharge their ownership interest remained subject to the pre-bankruptcy rights of the mortgage creditors. *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (discharge eliminates a debtor's personal liability on a mortgage but does not eliminate the secured creditor's lien rights against the underlying real estate). They intended to reaffirm the mortgage debts and keep the house subject to those debts, according to their statement of intentions (P–18 in case no.

05–14225). Their aim was not uncommon among consumer chapter 7 debtors filing cases in this district.

13. Bankruptcy Code section 542 provides in relevant part that "an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease ... or that the debtor may exempt ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

property of the estate that occurs after the commencement of the case and that is not authorized by the Bankruptcy Code or by the court. The trustee seeks to use section 549(a) to avoid payment of the Todd Drive property sale proceeds as an unauthorized post-petition transfer.[14]

Section 549(a) allows a trustee to avoid a post-petition transfer of *property of the estate*. The proceeds of the sale of the Todd Drive property were no longer property of the estate when the trustee sued. The trustee cannot use 11 U.S.C. § 549 to avoid the transfer of the sale proceeds either to Chase or to Jennifer Nagy.

### Counts 3 and 4—11 U.S.C. §§ 550 and 551 Provide no Basis for the Trustee's Claims

Section 550 applies only "to the extent a transfer has been avoided ..." under other Bankruptcy Code provisions. Section 551 by its terms also applies to transfers that have been avoided. Thus neither is applicable when a transfer has not been avoided. *See generally* 5 COLLIER ON BANKRUPTCY ¶ 550.01 at 550–3 (16th ed. rev.2010); 5 COLLIER ON BANKRUPTCY ¶ 551.01 at 551–2 (16th ed. rev.2010).

The trustee has no claim against Mrs. Nagy under Bankruptcy Code sections 542 or 549. For that reason, no basis exists for his claims under sections 550(a) and 551 for recovery of an avoided transfer from an immediate or mediate transferee and for preservation of the value of an avoided transfer for the estate.

---

**14.** Section 549(d)(2) requires a trustee to sue under section 549 before the earlier of "(1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed." The earlier of those two dates in the debtor's case was June 18, 2008, when the case was closed. Thus the trustee's January 23, 2009 complaint was untimely. However, Mrs. Nagy did not plead the statute of limitations in her answer to the trustee's complaint, first mentioning it only in her March 4, 2010

### Conclusion

The trustee's complaint for turnover and avoidance will be dismissed.

pre-trial memorandum. Consequently, the defendant waived the section 549 limitations defense. Fed. R. Bankr.P. 7008(c) (adopting Fed. R Civ. P. 8(c)); *In re Pugh*, 158 F.3d 530, 536 (11th Cir.1998). *Compare Matter of Texas General Petroleum Corp.*, 52 F.3d 1330, 1338 (5th Cir.1995) (comparing limitation provision in 11 U.S.C § 546(a) to that in section 549(d) and finding that the limitation in section 546(a) was an affirmative defense that was waived if not pled).